[No. 67314-9-I.   Division One.   October 8, 2012.]

THE STATE OF WASHINGTON, *Respondent*, v. ABRAHAM
MACDICKEN, *Appellant*.

*Thomas M. Kummerow* (of *Washington Appellate Project*), for appellant.

*Mark K. Roe, Prosecuting Attorney*, and *Mary K. Webber, Deputy*, for respondent.

¶1 LEACH, C.J. — Abraham MacDicken appeals his convictions of two counts of first degree robbery and one count of unlawful possession of a firearm. He challenges the trial court's denial of his motion to suppress evidence seized in a search incident to his arrest. A search incident to arrest may include the arrestee's person and the area "from within which he might gain possession of a weapon or destructible evidence."[1] Here, officers searched Abraham MacDicken's bags a car's length away from where MacDicken stood in handcuffs. Because MacDicken was still within reaching distance of the bags, which the officers feared might contain a firearm, the officers did not exceed the permissible scope of a search incident to arrest. The trial court properly denied MacDicken's motion to suppress, and we affirm.

## FACTS

¶2 On June 8, 2010, an individual, later identified as MacDicken, robbed Thomas Brinkly and Krystle Steig at gunpoint at a Lynnwood Extended Stay America hotel. Afterward, Brinkly reported to the police that MacDicken had taken several items, including a laptop computer, a cellular telephone, 20 DVDs (digital video discs), and an iPod. Officers later traced Steig's cellular telephone to a Travelers Inn in Edmonds.

¶3 Lynnwood Police Department Detectives Ross Adams and Sean Gillebo went to the Travelers Inn. There, they contacted the occupants of room 327, who were connected with a vehicle identified at the robbery scene. Krystal Ramsey answered the door and told the detectives that only she and two other women were sharing the room. When the detectives discovered that Ramsey had outstanding warrants from another jurisdiction, they took her into custody and called for backup assistance from a uniformed officer.

¶4 As the detectives were walking Ramsey to their patrol vehicle, they saw the two remaining occupants of room 327

---

[1] *Chimel v. California*, 395 U.S. 752, 763, 89 S. Ct. 2034, 23 L. Ed. 2d 685 (1969).

leave the hotel room. One of the women admitted to Detective Adams that she had outstanding warrants, and he placed her under arrest. Meanwhile, because Detective Gillebo could not confirm Ramsey's warrants, he released her from custody. At this point, Officer Brad Reorda arrived at the Travelers Inn.

¶5 Detective Adams then saw MacDicken, whom he recognized from an Extended Stay America surveillance video, leaving the hotel carrying a laptop bag and pushing a rolling duffel bag. With their weapons drawn, Detective Adams and Officer Reorda initiated a "high-risk" arrest.[2] MacDicken complied with the officers' orders to lie down on the ground, and Detective Adams advised MacDicken that he was under arrest for first degree robbery. Detective Gillebo placed MacDicken in handcuffs.

¶6 After handcuffing MacDicken, Detective Gillebo arrested Ramsey for obstruction. Officer Greg Cornett arrived about that time. After arresting Ramsey, Gillebo returned to MacDicken, who was still in handcuffs and was standing outside the patrol car, talking to another officer. Detective Gillebo noticed that the laptop bag and rolling duffel bag were lying on the ground near MacDicken, so he moved them "about a car length away" from MacDicken and searched them. Inside the laptop bag, Detective Gillebo found a small black Kel Tec nine millimeter pistol, a laptop computer belonging to Steig, a pair of women's jeans, a white T-shirt, and a letter addressed to Steig.[3] At the time of the search, two detectives and two uniformed officers were dealing with four individuals in the hotel's public parking lot.

---

[2] At the CrR 3.6 hearing, Detective Adams described why he considered the arrest "high-risk," explaining, "Given the nature of the crime, the belief that he was still armed with a firearm, we identified ourselves as police, ordered him to the ground at gunpoint. Once he was in a secured prone position on the ground while myself and Officer Reorda covered him, Detective Gillebo went in and placed him in handcuffs."

[3] After being advised of his constitutional rights, MacDicken admitted to stealing the laptop and the laptop bag from Steig.

¶7  The State charged MacDicken with two counts of first degree robbery while armed with a firearm and one count of first degree unlawful possession of a firearm. MacDicken moved to suppress the evidence obtained from the search of the bags on the basis that the officers had performed an unlawful search incident to arrest. The trial court denied the suppression motion, concluding,

> Although handcuffed, the defendant was standing next to the patrol car[;] he could still kick at the officers or reach for a weapon despite the handcuffs. . . . At the time of the arrest and the search, there were three of the defendant's associates in close proximity, only one of which had been arrested. The actions of Det[ective] Gillebo in securing the second of the defendant's associates and removing the bags a short distance from the defendant were not a sufficient intervening event to render the search no longer a search incident to arrest. They were reasonable [steps] taken to assure the safety of Det[ective] Gillebo and the other officers and the public at the time of the arrest and the search incident thereto.

¶8  A jury convicted MacDicken as charged and returned a special verdict, finding that MacDicken was armed with a firearm at the time he committed the crimes. MacDicken appeals.

## STANDARD OF REVIEW

¶9  In reviewing the denial of a motion to suppress, we determine whether substantial evidence supports the trial court's findings of fact and whether those findings support the trial court's conclusions of law.[4] We review conclusions of law de novo.[5] Unchallenged findings of fact are verities on appeal.[6]

---

[4] *State v. Ross*, 106 Wn. App 876, 880, 26 P.3d 298 (2001). Substantial evidence exists if sufficient to persuade a fair-minded, rational person of the truth of the matter asserted. *State v. Levy*, 156 Wn.2d 709, 733, 132 P.3d 1076 (2006).

[5] *State v. Acrey*, 148 Wn.2d 738, 745, 64 P.3d 594 (2003).

[6] *State v. O'Neill*, 148 Wn.2d 564, 571, 62 P.3d 489 (2003).

## ANALYSIS

██ ¶10 MacDicken claims the officer's search violated his right to privacy under article I, section 7 of the Washington State Constitution.[7] Article I, section 7 prohibits a warrantless search, subject to a limited set of exceptions.[8] The State bears the burden of establishing that an exception to the warrant requirement applies.[9] Under the exclusionary rule, the State may not present evidence seized during an illegal search in its case in chief.[10]

██ ¶11 An officer may conduct a warrantless search of limited scope incident to a lawful arrest.[11] The search incident to arrest exception "derives from interests in officer safety and evidence preservation that are typically implicated in arrest situations."[12] In *Chimel v. California*,[13] the United States Supreme Court stated that the permissible scope of a search incident to arrest includes the arrestee's person and the area within his or her immediate control, meaning "the area from within which he might gain possession of a weapon or destructible evidence." "That limitation . . . ensures that the scope of a search incident to arrest is commensurate with its purposes of protecting

---

[7] Article I, section 7 provides, "No person shall be disturbed in his private affairs, or his home invaded, without authority of law." MacDicken also cites the Fourth Amendment to the United States Constitution but makes no separate argument on that basis. The State contends that MacDicken lacks standing to raise this issue. In view of our disposition of the search issue, we do not address the State's standing argument, which relates only to the first degree robbery convictions.

[8] *State v. Garvin*, 166 Wn.2d 242, 249, 207 P.3d 1266 (2009) (identifying the following exceptions to the warrant requirement: exigent circumstances, searches incident to a valid arrest, inventory searches, plain view searches, and investigative stops).

[9] *State v. Kirwin*, 165 Wn.2d 818, 824, 203 P.3d 1044 (2009).

[10] *State v. Gaines*, 154 Wn.2d 711, 716-17, 116 P.3d 993 (2005).

[11] *Garvin*, 166 Wn.2d at 249-50.

[12] *Arizona v. Gant*, 556 U.S. 332, 338, 129 S. Ct. 1710, 173 L. Ed. 2d 485 (2009).

[13] 395 U.S. 752, 762-63, 89 S. Ct. 2034, 23 L. Ed. 2d 685 (1969).

arresting officers and safeguarding any evidence of the offense of arrest that an arrestee might conceal or destroy."[14] Thus, if a possibility exists that an arrestee could reach into the area that officers seek to search, both justifications for the search incident to arrest exception are present.[15] Once officers have obtained exclusive control of an item, such that no danger exists that the arrestee might gain access to the item to seize a weapon or destroy evidence, officers may not conduct a warrantless search of that item incident to the arrest.[16]

¶12 Here, MacDicken could have possibly reached the bags to seize a weapon. The bags were not in Gillebo's exclusive control, and officer safety was a substantial concern during MacDicken's arrest, given the nature of his crime. Officers suspected MacDicken of committing a crime involving a firearm and considered him a "high-risk" arrestee because he was potentially armed. Additionally, the arrest occurred in a public area and several people associated with MacDicken stood nearby. Although Detective Gillebo moved the bags some distance away from MacDicken, they were still within reaching distance. Therefore, their relocation did not eliminate the possibility of MacDicken accessing them. Neither did the fact that MacDicken was in handcuffs. Cases exist where handcuffed individuals have acted extraordinarily, threatening officers and public safety.[17] Under these circumstances, the search was commensurate with the twin justifications for a search

---

[14] *Gant*, 556 U.S. at 339.

[15] *Gant*, 556 U.S. at 339.

[16] *United States v. Chadwick*, 433 U.S. 1, 15, 97 S. Ct. 2476, 53 L. Ed. 2d 538 (1977), *overruled on other grounds by California v. Acevedo*, 500 U.S. 565, 579, 111 S. Ct. 1982, 114 L. Ed. 2d 619 (1991).

[17] As the Third Circuit has noted, " 'Albeit difficult, it is by no means impossible for a handcuffed person to obtain and use a weapon concealed on his person or within lunge reach, and in so doing to cause injury to his intended victim, to a bystander, or even to himself. Finally, like any mechanical device, handcuffs can and do fail on occasion'. . . . '[I]n 1991 alone . . . at least four police officers were killed by persons who had already been handcuffed.' And such incidents continue." *United States v. Shakir*, 616 F.3d 315, 321 (3d Cir.) (third alteration in original)

incident to arrest—protecting arresting officers and preserving evidence.

¶13 MacDicken relies on *State v. Byrd*[18] and *United States v. Maddox*.[19] In *Byrd* and *Maddox*, however, the defendants were handcuffed *and* secured in the back of a patrol car at the time the searches occurred.[20] The defendants could no longer reach the searched objects, rendering those cases distinguishable from this one. Unlike the cases where the arrestee is in the back of a police car, MacDicken was not completely removed from the immediate area of the search.[21] A reasonable possibility still existed that MacDicken might access the bags.

## CONCLUSION

¶14 Because bags possibly containing a weapon were accessible to MacDicken at the time of the search, the warrantless search of them incident to his arrest was lawful. We affirm.

BECKER and LAU, JJ., concur.

Reconsideration denied November 2, 2012.

Review granted at 177 Wn.2d 1004 (2013).

---

(quoting *United States v. Sanders*, 994 F.2d 200, 209-10 (5th Cir. 1993)), *cert. denied*, 131 S. Ct. 841 (2010). "The limitations of handcuffs' effectiveness are widely known to law enforcement personnel." *Sanders*, 994 F.2d at 209.

[18] 162 Wn. App. 612, 258 P.3d 686, *review granted*, 173 Wn.2d 1001, 268 P.3d 942 (2011).

[19] 614 F.3d 1046 (9th Cir. 2010).

[20] *Byrd*, 162 Wn. App. at 614; *Maddox*, 614 F.3d at 1047.

[21] We decline to consider MacDicken's argument that *Gant* overruled the case the trial court relied upon to deny his motion to suppress, *State v. Smith*, 119 Wn.2d 675, 835 P.2d 1025 (1992). Regardless of *Smith*'s continuing validity, the trial court's decision to deny MacDicken's motion is supported by *Chimel*, a case that the United States Supreme Court reaffirmed in *Gant*. *Gant*, 556 U.S. at 343.