[No. 41945-9-II.   Division Two.   January 8, 2013.]

THE STATE OF WASHINGTON, *Respondent*, v. MICHAEL ALLYN
ELLISON, *Appellant*.

712

*Stephanie C. Cunningham*, for appellant.

*Mark E. Lindquist, Prosecuting Attorney*, and *Stephen D. Trinen, Deputy*, for respondent.

¶1 QUINN-BRINTNALL, J. — Tacoma police officers arrested Michael Ellison for outstanding warrants, including a warrant for domestic violence assault, after responding to a "domestic violence/unwanted person" phone call at the home of Ellison's ex-girlfriend. Clerk's Papers (CP) at 58. During a search incident to arrest, officers located a significant amount of other people's personal and financial information in Ellison's backpack. At a stipulated facts

bench trial following a CrR 3.6 hearing, the trial court found Ellison guilty of 17 counts of second degree identity theft, 6 counts of second degree possession of stolen property, and 1 count of unlawful possession of payment instruments. Ellison appeals, arguing that substantial evidence in the record does not support two of the trial court's findings of fact and that the reasoning of *Arizona v. Gant*, 556 U.S. 332, 129 S. Ct. 1710, 173 L. Ed. 2d 485 (2009), applies to situations involving any search of an arrestee's personal items incident to arrest.

¶2 Because the invited error doctrine precludes Ellison from challenging a fact he stipulated to, and because Ellison fails to support his contention that substantial evidence does not support the other finding, we do not address the merits of his contentions. Also, because *Gant* did not overrule or significantly limit the officer safety rationale for searches incident to arrest clearly articulated in *Chimel v. California*, 395 U.S. 752, 89 S. Ct. 2034, 23 L. Ed. 2d 685 (1969), we affirm.

## FACTS

¶3 Shortly after midnight on June 4, 2010, Tacoma Police Officers Eric Barry and Brett Beall responded to a 911 call from a female homeowner reporting that her estranged boyfriend, Ellison, was outside her home and refusing to leave. While searching a patio area around the exterior of the home, Barry observed "a blanket covering several items on the back patio." CP at 58. Barry lifted the bottom of the blanket on the off chance Ellison might be hiding there and saw "a pair of human feet . . . with a backpack in between them." Report of Proceedings (RP) at 14. After identifying himself as a police officer, Barry asked multiple times that the individual come out and show his hands. The suspect did not respond. Beall came to assist Barry, and after fully removing the blanket, the officers confirmed that the suspect matched the description of the unwanted person given by the homeowner.

¶4 Officer Beall handcuffed the suspect, and shortly thereafter, the suspect provided Beall and Officer Barry with his name and date of birth. The officers confirmed that the suspect was Ellison and, further, that he had multiple outstanding warrants, including a warrant for domestic violence assault. Beall arrested Ellison on the outstanding warrants. During a pat-down search of Ellison, the officers found two cellular phones and a glass pipe containing what appeared to be marijuana residue. Beall then searched the backpack originally located between Ellison's feet to ensure that it did not contain weapons. Ellison was still present, on the patio, when Beall searched the backpack. In the backpack, officers found drug paraphernalia and a gallon-sized plastic bag containing numerous financial documents, including personal checks. The officers also found a copy of a warrant in the backpack with Ellison's name on it. Police later confirmed that most of the recovered financial documents had been stolen or reported missing.

¶5 The State charged Ellison with 17 counts of second degree identity theft, 1 count of unlawful possession of payment instruments, and 6 counts of second degree possession of stolen property. RCW 9.35.020(3); RCW 9A.56-.320(2)(a)(i), .140(1). Ellison moved to suppress all of the items found in his backpack, arguing that the officer safety exception to the rule against warrantless searches was inapplicable. The trial court denied the motion, ruling that the "officers had a legitimate concern for their safety based upon the circumstances of the call and the circumstances of the defendant's arrest." CP at 70. The trial court further ruled that the search "occurred in [Ellison's] presence," "contemporaneous with [his] arrest," and "before the search was rendered unreasonable." CP at 70.

¶6 Ellison submitted his case for trial on stipulated facts. The trial court found Ellison guilty on all 24 counts. Ellison timely appeals.

## DISCUSSION

### CRR 3.6 FINDINGS

¶7 Ellison first argues that substantial evidence does not support the trial court's CrR 3.6 findings that police were responding to a "domestic violence/unwanted person call" and that he had "possession and control" of the backpack at the time of his arrest. Br. of Appellant at 7. Ellison contends that, therefore, these findings should not be binding on appeal. But Ellison stipulated to the fact that officers were responding to a "domestic violence/unwanted person call." CP at 58. Moreover, because our review of the record reveals sufficient evidence to persuade a fair-minded, rational person that Ellison had "possession and control" of his backpack at the time of his arrest, his second argument is meritless.

### A. FINDING OF FACT 1: DOMESTIC VIOLENCE

¶8 The trial court's first finding of fact states that "[o]n June 4, 2010, just after midnight, Tacoma Police Department officers [Brett Beall] and Eric Barry were dispatched to the residence of Sunshine McDuffie regarding a domestic violence/unwanted person call." CP at 68. Ellison contends that evidence presented at the CrR 3.6 hearing does not support a finding that "there had been or might be 'violence.' "[1] Br. of Appellant at 7. Because Ellison stipulated to a factual finding that officers were responding to a "domestic violence/unwanted person call," he is precluded from challenging this finding on appeal.

¶9 The invited error doctrine "prohibits a party from setting up an error at trial and then complaining of it on appeal." *State v. Pam*, 101 Wn.2d 507, 511, 680 P.2d 762 (1984), *overruled on other grounds by State v. Olson*, 126 Wn.2d 315, 321, 893 P.2d 629 (1995).

---

[1] Ellison does not explain why the distinction between a "domestic violence" and "unwanted person" call is legally relevant.

¶10 Here, after the CrR 3.6 hearing, Ellison signed a lengthy "Agreement Relating to Stipulated Facts Trial." The statement of facts section of that agreement begins by stating,

> The defendant understands that the following paragraphs set out a summary of the evidence that the State would anticipate presenting at trial. For purposes of this document, the defendant stipulates that the court can consider these facts as true and correct and should also consider them as proved beyond a reasonable doubt. [Ellison's initials]
>
> Tacoma Police Department officers Bret[t] Beall and Eric Barry were dispatched to the residence of Sunshine McDuffie on June 4th, 2010, just a few minute[s] past midnight. The nature of the dispatch was a *domestic violence / unwanted person call*.

CP at 58 (emphasis added).

¶11 Thus, Ellison stipulated to the fact that police officers were responding to a domestic violence/unwanted person call. Irrespective of whether the State presented adequate evidence at the CrR 3.6 hearing to substantiate this factual finding, Ellison is bound by his stipulation at trial and the invited error doctrine bars him from now challenging facts he stipulated to at trial.[2]

---

[2] To be clear, the State presented ample evidence at the CrR 3.6 hearing supporting this finding. Officer Barry testified at the CrR 3.6 hearing that he and Officer Beall were responding to an unwanted person call involving a "female caller [who] was calling to say that her estranged boyfriend was there knocking on the door and refusing to leave." RP at 10. Beall testified that he and Barry handcuffed Ellison "because of the nature of the call: A domestic relationship between them. He was refusing to leave, and also the fact that he was hiding from us when we showed up." RP at 43. Beall also testified that Ellison had an outstanding warrant for domestic violence assault. This evidence is more than sufficient to persuade any rational trier of fact that substantial evidence supports the trial court's findings. That the unwanted person in this case, Ellison, was an estranged boyfriend with a history of domestic violence amply supports such a finding.

## B. FINDING OF FACT 14: POSSESSION AND CONTROL OF THE BACKPACK

¶12 The trial court's finding of fact 14 states that "[a]t the time of his arrest, the defendant was in possession and control of the blue backpack and all the contents therein and the pack was within the defendant's reasonable reach." CP at 69. Ellison argues that he was "in possession of the backpack when he was first discovered and contacted by the officers" but "was not actually placed under arrest until after he was ordered to the ground, placed in handcuffs, and the officers confirmed the arrest warrants." Br. of Appellant at 7. Because of this, he contends—with little argumentation and no citation to legal authority—that he "had been separated from his backpack, and was not in control or within reach of his backpack, at the time of his arrest." Br. of Appellant at 7. This argument has been repeatedly rejected.[3]

¶13 When reviewing a trial court's findings following a suppression motion, we examine whether substantial evidence supports the challenged findings. *State v. Ross*, 106 Wn. App. 876, 880, 26 P.3d 298 (2001), *review denied*, 145 Wn.2d 1016 (2002). "Substantial evidence" is " 'evidence in sufficient quantum to persuade a fair-minded person of the truth of the declared premises.' " *State v. Jeannotte*, 133 Wn.2d 847, 856, 947 P.2d 1192 (1997) (internal quotation marks omitted) (quoting *Olmstead v. Dep't of Health*, 61 Wn. App. 888, 893, 812 P.2d 527 (1991)). Unchallenged

---

[3] *See, e.g.*, *State v. Smith*, 119 Wn.2d 675, 681-82, 835 P.2d 1025 (1992) (search of a defendant's "fanny pack" was valid incident to arrest despite the defendant being handcuffed at the time of the search); *United States v. Johnson*, 846 F.2d 279, 282-84 (5th Cir.) (search of a briefcase incident to lawful arrest was valid), *cert. denied*, 488 U.S. 995 (1988); *United States v. Maldonado-Espinosa*, 968 F.2d 101, 104 (1st Cir. 1992) (search of carry-on bag placed on a table next to handcuffed suspect valid as incident to arrest because it was within reach of arrestee), *cert. denied*, 507 U.S. 984 (1993); *United States v. Gomez*, 807 F. Supp. 2d 1134, 1143-44 (S.D. Fla. 2011) ("Historically . . . the broad grant of authority to search [incident to arrest] includes highly private articles on a person like a wallet or purse, a briefcase, a backpack or personal bag, [or] an address book or organizer." (footnotes omitted)).

findings are verities on appeal, *Ross*, 106 Wn. App. at 880, and we review de novo a trial court's conclusions of law in an order pertaining to suppression of evidence. *State v. Carneh*, 153 Wn.2d 274, 281, 103 P.3d 743 (2004).

¶14 At the CrR 3.6 hearing, Officers Barry and Beall testified that at the time they discovered Ellison hiding under the blanket, his backpack was between his feet. And although Barry and Beall did have Ellison move to the ground and placed him in handcuffs during the process of detaining him, the officers testified that the search occurred within five minutes of their initial contact and that Ellison was present when they searched his backpack.

¶15 In his briefing to this court, Ellison fails to explain why, as a matter of law, this evidence is insufficient to support the trial court's findings that he was in possession and control of the backpack at the time of his arrest. He cites to no legal authority and simply draws a different conclusion from the evidence than the trial court. But as our Supreme Court has said, "It is elementary that the lack of argument, lack of citation to the record, and lack of any authorities preclude consideration of those assignments [of error to the findings]. The findings are verities." *Henderson Homes, Inc. v. City of Bothell*, 124 Wn.2d 240, 244, 877 P.2d 176 (1994). Accordingly, Ellison's argument fails.[4]

SEARCH INCIDENT TO ARREST

¶16 Finally, Ellison argues that the reasoning of the United States Supreme Court's decision in *Gant* applies to warrantless searches outside the context of automobile searches and, thus, the trial court erred by refusing to

---

[4] We note, moreover, that our Supreme Court has held that "[a]n object is . . . within the control of an arrestee for the purposes of a search incident to an arrest as long as the object was within the arrestee's reach *immediately prior to*, or at the moment of, the arrest." *Smith*, 119 Wn.2d at 681-82 (emphasis added). And although "a significant delay between the arrest and the search renders the search unreasonable because it is no longer contemporaneous with the arrest," *Smith*, 119 Wn.2d at 683, Ellison fails to explain how a search occurring within five minutes of an arrest is no longer contemporaneous with the arrest itself or why *Smith* should be distinguished on this point.

suppress evidence located inside his backpack because he could not reasonably gain possession of the contents of his backpack at the time police searched it. But *Gant* did not alter *Chimel*'s long-standing officer safety exception to the warrant requirement, which justified the search of Ellison's backpack here.

A. STANDARD OF REVIEW

¶17 We review de novo a trial court's conclusions of law on a motion to suppress evidence. *Carneh*, 153 Wn.2d at 281. Here, we must determine whether the trial court erred in ruling that police may conduct a warrantless search of an object, like a backpack, that was in a defendant's possession and control at the time of arrest as a valid search incident to arrest predicated on officer safety concerns.

B. WARRANTLESS SEARCHES: BACKGROUND

██ ██ ¶18 A warrantless search is per se unreasonable under article I, section 7 of the Washington Constitution "unless it falls within one of the few exceptions to the warrant requirement." *State v. Rankin*, 151 Wn.2d 689, 695, 92 P.3d 202 (2004).[5] To determine the existence and scope of exceptions to the warrant requirement, courts "look at the constitutional text, the origins and law at the time [the Washington] constitution was adopted, and the evolution of that law and its doctrinal development." *State v. Valdez*, 167 Wn.2d 761, 773, 224 P.3d 751 (2009).

██ ¶19 Washington law has long recognized the validity of searching a defendant and the property immediately within his or her control without a warrant in the process of making an arrest. In *State v. Nordstrom*, 7 Wash. 506, 509-10, 35 P. 382 (1893), *aff'd*, 164 U.S. 705, 17 S. Ct. 997, 41 L. Ed. 1183 (1896), for instance, our Supreme Court held

---

[5] Although Ellison's arguments also implicate the Fourth Amendment, article I, section 7 of the Washington Constitution provides, at the least, coextensive protection of individual privacy rights. Accordingly, we need not separately address Ellison's challenge on Fourth Amendment grounds. U.S. CONST. amend. IV.

that a defendant's boots, socks, cap, and memo book were properly taken from the defendant upon arrest and admitted into evidence. Similarly, in *City of Olympia v. Culp*, 136 Wash. 374, 377-78, 240 P. 360 (1925), the court held that a bottle of intoxicating liquor was properly seized from an arrestee who attempted to flee a police raid. *See also State v. Fladebo*, 113 Wn.2d 388, 395, 779 P.2d 707 (1989) (holding that officers did not violate a defendant's article I, section 7 rights in searching her purse during a search incident to arrest). Generally, the search incident to arrest exception is justified by "interests in officer safety and evidence preservation that are typically implicated in arrest situations." *Gant*, 556 U.S. at 338.

¶20 In 1969, the United States Supreme Court articulated the scope of the search incident to arrest exception to the warrant requirement. In *Chimel*, the Court explained that

> [w]hen an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape. Otherwise, the officer's safety might well be endangered, and the arrest itself frustrated. In addition, it is entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction. And the area into which an arrestee might reach in order to grab a weapon or evidentiary items must, of course, be governed by a like rule. A gun on a table or in a drawer in front of one who is arrested can be as dangerous to the arresting officer as one concealed in the clothing of the person arrested. There is ample justification, therefore, for a search of the arrestee's person and the area "within his immediate control"—construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence.

395 U.S. at 762-63.

¶21 Although the precise contours of the Washington Constitution's article I, section 7 jurisprudence (and the

United States Constitution's Fourth Amendment jurisprudence) have shifted since *Chimel* was decided, *Chimel* still provides the starting point for determining whether a warrantless search is justified. As the *Gant* Court itself explained,

> In *Chimel*, we held that a search incident to arrest may only include "the arrestee's person and the area 'within his immediate control'—construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence." [*Chimel*, 395 U.S. at 763]. That limitation, *which continues to define the boundaries of the exception*, ensures that the scope of a search incident to arrest is commensurate with its purposes of protecting arresting officers and safeguarding any evidence of the offense of arrest that an arrestee might conceal or destroy. *See ibid.* (noting that searches incident to arrest are reasonable *"in order to* remove any weapons [the arrestee] might seek to use" and *"in order to prevent* [the] concealment or destruction" of evidence (emphasis added)). If there is no possibility that an arrestee could reach into the area that law enforcement officers seek to search, both justifications for the search-incident-to-arrest exception are absent and the rule does not apply.

556 U.S. at 339 (emphasis added) (second and third alterations in original).

¶22 Even assuming that *Gant* can be extended to searches outside the automobile context, *Gant* has not eliminated the officer safety exception to the warrant requirement or the validity of a protective search of the person, objects, and area in the "immediate control" of the arrestee at the time of arrest as allowed by *Chimel* and *Fladebo*.

¶23 Here, Ellison's involvement with police did not begin with a traffic violation. Instead, the officers were responding to a potentially dangerous situation involving an estranged boyfriend, Ellison, refusing to leave his ex-girlfriend's property. Moreover, when Officer Barry first made contact with Ellison, Ellison refused to comply with Barry's

commands that Ellison show his hands. Accordingly, concern for officer safety (and the safety of Ellison's ex-girlfriend) was heightened in this situation and the search of the backpack Ellison guarded incident to arrest was justified. Moreover, although handcuffed at the scene, unlike the defendant in *Gant*, Ellison was not securely placed in the officer's patrol car before the search of his backpack. It is possible that despite his restraints, Ellison could have escaped and procured a potential weapon from the backpack. *See United States v. Sanders*, 994 F.2d 200, 209-10 (5th Cir. 1993) ("The limitations of handcuffs' effectiveness are widely known to law enforcement personnel. . . . Despite this widespread knowledge, in 1991 alone . . . at least four police officers were killed by persons who had already been handcuffed." (footnotes omitted)), *cert. denied*, 510 U.S. 955, 510 U.S. 1014 (1993). Last, Officers Barry and Beall clearly articulated at Ellison's CrR 3.6 hearing that they searched his bag in light of officer safety concerns—a valid exception to the warrant requirement. The officers' biggest concern was that the backpack might contain a live firearm (loaded, with the safety off) and that leaving it at the scene or transporting it to the jail in the trunk of their patrol car presented an unacceptable safety risk. *See, e.g.*, RP at 32-33 ("If I hit a bump on the way to the jail, it could conceivably cause a firearm to go off.").

¶24 Thus, irrespective of *Gant*'s applicability to situations outside the context of automobile searches, officer safety concerns justified searching Ellison's backpack in this case.

### C. DIVISION THREE'S *BYRD* DECISION

¶25 Ellison contends that Division Three's recent opinion in *State v. Byrd*, 162 Wn. App. 612, 258 P.3d 686, *review granted*, 173 Wn.2d 1001 (2011), dictates a different result. But the *Byrd* decision, whether rightly or wrongly decided, does not control.

¶26 Division Three of this court has twice addressed whether *Gant* applies outside the context of an automobile

search incident to arrest, with contradictory results.[6] First, in *State v. Johnson*, 155 Wn. App. 270, 281-82, 229 P.3d 824, *review denied*, 170 Wn.2d 1006 (2010), Division Three concluded that where a defendant was arrested while exiting her vehicle with her purse, police were justified in searching the purse incident to arrest because they "did not obtain her purse by searching the vehicle" and *Gant* only "applies to warrantless searches of vehicles incident to arrest." But a divided panel of Division Three (comprising all three judges who signed *Johnson*) abrogated the decision a year later in *Byrd*.

¶27 In *Byrd*, a police officer stopped a vehicle for using stolen license plates and arrested the driver on an outstanding warrant. 162 Wn. App. at 614. The driver told the officer that the car belonged to the vehicle's passenger, Lisa Byrd. *Byrd*, 162 Wn. App. at 614. The officer approached Byrd—who was still seated in the car's passenger seat—removed the purse from her lap, placed it on the ground outside of the vehicle, and arrested her. *Byrd*, 162 Wn. App. at 614. The officer then secured Byrd in his patrol car and searched her purse, finding methamphetamine and a glass pipe. *Byrd*, 162 Wn. App. at 614. At a pretrial suppression hearing, Byrd successfully argued that the "search of her purse violated *Gant*" and that "the search incident to arrest exception did not authorize the warrantless search of [her] purse." *Byrd*, 162 Wn. App. at 614.

¶28 On appeal, the State argued that *Johnson* was controlling and the search was a valid search incident to arrest. A majority of the panel disagreed, stating, "In *Johnson*, we indeed held that *Gant* controls the search of a vehicle incident to arrest but not the search of a purse

---

[6] We note that since we heard oral argument on this case, Division One of this court released its opinion in *State v. MacDicken*, 171 Wn. App. 169, 286 P.3d 413 (2012), *petition for review filed*, No. 88267-3 (Wash. Jan. 4, 2013). The *MacDicken* court concluded, as we do, that an arrestee who is handcuffed but still present on the scene (meaning an arrestee not secured in a patrol car) is still within reaching distance of a bag, and officer safety concerns justify a warrantless search of the bag. 171 Wn. App. at 175-76.

incident to arrest. We now conclude that we were wrong." *Byrd*, 162 Wn. App. at 615 (citation omitted). In explaining its sudden reversal, the court discussed its reliance on *Johnson* in *State v. Smith*, 119 Wn.2d 675, 835 P.2d 1025 (1992).[7]

¶29 The *Byrd* court explained that in light of *Gant*'s rejection of *Belton*'s (*New York v. Belton*, 453 U.S. 454, 101 S. Ct. 2860, 69 L. Ed. 2d 768 (1981)) expansive approval of automobile searches incident to arrest,

> the test announced in *Smith* and applied in *Johnson* is based on a rejected interpretation of *Belton*, an interpretation that *Gant* overruled. We are bound by *Gant*'s interpretation of *Belton*. *Valdez*, 167 Wn.2d at 780 (J.M. Johnson, J., concurring). And, while the State argues that *Gant* should not apply because it involved the search of a vehicle incident to arrest, *Gant* and *Belton* simply applied the general rules of the search incident to arrest exception set out in *Chimel* to the automobile context. A search incident to an arrest is a search incident to an arrest whether the object searched is a car or a purse.
>
> . . . .
>
> Under *Chimel*, . . . the search incident to arrest exception permits an officer to perform a warrantless search of an arrestee and the area within his or her immediate control when an arrest is made. *Chimel*, 395 U.S. at 762-63. This type of warrantless search is justified only by interests in officer safety and the preservation of evidence. *Id.* But such a search is unreasonable where the interests justifying it are absent. *Id.*

---

[7] In *Smith*, the Washington Supreme Court addressed whether an officer could search a defendant's fanny pack that had fallen off in the course of the officer apprehending and arresting the defendant. In that case, the search of the fanny pack occurred "between 9 and 17 minutes after the arrest" while the defendant was secured in the backseat of the officer's patrol car. *Smith*, 119 Wn.2d at 677. The court concluded that the search was a valid search incident to arrest because

[p]ursuant to [*New York v.*] *Belton*, [453 U.S. 454, 101 S. Ct. 2860, 69 L. Ed. 2d 768 (1981),] a search incident to arrest is valid under the Fourth Amendment: (1) if the object searched was within the arrestee's control when he or she was arrested; and (2) if the events occurring after the arrest but before the search did not render the search unreasonable. *United States v. Turner*, 926 F.2d 883, 887 (9th Cir.), *cert. denied*, [502 U.S. 830] (1991) (citing *United States v. Fleming*, 677 F.2d 602, 607 (7th Cir. 1982)).

*Smith*, 119 Wn.2d at 681.

at 768. That is, an officer may not, without a warrant, search an object that the arrestee cannot reach at the time of the search. *Gant*, 556 U.S. at 343; *Chimel*, 395 U.S. at 763-64, 768.

Here, Ms. Byrd was secured in a patrol car when her purse was searched. She had no way to access the purse at that time. And the arresting officer was not concerned that she could access a weapon or destroy evidence. The justifications for the search incident to arrest exception, then, did not exist here. The exception did not apply. And the warrantless search of Ms. Byrd's purse violated the Fourth Amendment.

162 Wn. App. at 616-17.

¶30 Whether or not the *Byrd* decision is correctly decided, it is distinguishable from the facts of this case. First, in *Byrd*, the defendant was handcuffed in a patrol car at the time the officer searched her purse, making it impossible for her to access any potential weapons in the purse. Here, however, officers searched Ellison's bag within five minutes of arresting him and he was not secured in a police vehicle at the time. And although handcuffed, it is at least possible that Ellison could have escaped his restraints and procured a potential weapon from the backpack. Second, unlike in *Byrd*, Officers Barry and Beall clearly articulated at Ellison's CrR 3.6 hearing that they searched his bag in light of officer safety concerns that it could contain a live firearm—a valid exception to the warrant requirement. Third, Ellison's contact with police did not begin with a traffic infraction but, instead, while officers were responding to a potentially dangerous situation involving a domestic violence/unwanted person call at Ellison's estranged girlfriend's residence. The concern over officer safety was heightened in this situation and the search of the backpack incident to arrest was justified.[8]

---

[8] We note that in addition to the concern over officer safety being heightened, Ellison's expectation of privacy—the traditional grounds for deciding whether a search violates a defendant's Fourth Amendment privacy rights—was diminished in this situation. *See, e.g., State v. Salinas*, 169 Wn. App. 210, 220, 279 P.3d 917 (2012) ("Once a person is arrested, there is a diminished expectation of privacy of the person, including clothing and personal possessions closely associated with

¶31 Nothing in *Chimel* or *Gant* dictates that officers may no longer protect the public and themselves by searching the area and objects within the immediate control of a suspect at the time of his arrest. And whether rightly decided or not, the facts in *Byrd* are distinguishable from those addressed here. Accordingly, Ellison's contention that the trial court erred in failing to suppress the evidence seized from his backpack fails, and we affirm his convictions.

JOHANSON, A.C.J., and PENOYAR, J., concur.

Petition for review filed February 8, 2013.

---

clothing."), *petition for review filed*, No. 87775-1 (Wash. Aug. 20, 2012). Unlike the passenger in *Byrd*, Ellison's first contact with police did not occur while Ellison was in an area that we typically afford heightened Fourth Amendment protection (like in his own home) or engaging in an activity where freedom of movement is expected (such as driving in his own car). A defendant who trespasses to harass an estranged romantic partner should reasonably expect less Fourth Amendment protection when the police become involved.