# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | No. 69035-3-I |
| Respondent, | |
| v. | DIVISION ONE |
| JOSHUA ADAM LEVINSON, | UNPUBLISHED OPINION |
| Appellant. | FILED: September 16, 2013 |

LEACH, C.J. — Joshua Levinson appeals his conviction for possession of a controlled substance. He challenges the trial court's denial of his motion to suppress evidence seized during a search of his motel room, claiming that he did not voluntarily consent to the search. Because substantial evidence supports the trial court's finding that Levinson voluntarily consented to the search, the trial court properly admitted the evidence seized during the search. We affirm.

## Background

On September 15, 2011, around 9:40 p.m., Deputy Lucas Robinson was at a motel looking for a wanted individual. Levinson was with Laurie Vine in one of the motel rooms when Robinson knocked on the door. Before knocking, Robinson looked through partially open window blinds and saw a glass smoking device on a bed in the room.

Levinson opened the door after Robinson knocked. Both Levinson and Vine told Robinson that they did not know the individual for whom Robinson was looking. Robinson told them that he could see a pipe on the bed and asked permission to enter to retrieve it and any other evidence inside the room. He also told them that seeing the pipe on the bed was sufficient to write a search warrant. Before entering the room, Robinson gave them verbal Ferrier[1] warnings. Both Levinson and Vine signed written waivers of their Miranda[2] rights.

During Robinson's search, Levinson remained in the room, and Vine stood in or just outside the doorway. Robinson seized the pipe, other drug paraphernalia, methamphetamine, and heroin.

The State charged Levinson with possession of a controlled substance—heroin. Before trial, Levinson filed a motion to suppress the seized evidence under CrR 3.6, claiming that the evidence resulted from an unlawful search of the motel room. After a hearing at which only Levinson and Robinson testified, the court denied the motion. Levinson agreed to a stipulated bench trial on agreed documentary evidence. The court found Levinson guilty as charged and imposed a standard range sentence. Levinson appeals.

---

[1] State v. Ferrier, 136 Wn.2d 103, 118-19, 960 P.2d 927 (1998).
[2] Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

Analysis

Levinson claims, "The police officer misrepresented his authority to search when he did not have probable cause to obtain a warrant based on the local regulation prohibiting possession of drug paraphernalia." He asserts that RCW 69.50.412 criminalizes only the use of drug paraphernalia, "not its mere possession," and that Robinson did not see him use drug paraphernalia. He further argues that even though "[t]he prosecutor insisted that the officer could have obtained a warrant to search the motel room under the Snohomish County Code," "[SCC 10.48.020] is not an enforceable ordinance because it is preempted by state law." Levinson concludes, "To the extent Levinson's search was premised on this ordinance, it was invalid."

Article XI, section 11 of the Washington Constitution permits counties to enact ordinances prohibiting the same acts that state law prohibits so long as the legislature did not intend the state law to be exclusive and the county ordinance does not conflict with the general law of the state.[3] "A local ordinance must yield to a state statute 'if the statute preempts the field, leaving no room for concurrent jurisdiction, or if a conflict exists between the two that cannot be harmonized.'"[4]

RCW 69.50.412(1) states, "It is unlawful for any person to use drug paraphernalia to plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack,

---

[3] State v. Fisher, 132 Wn. App. 26, 31, 130 P.3d 382 (2006) (quoting City of Tacoma v. Luvene, 118 Wn.2d 826, 833, 827 P.2d 1374 (1992)).

[4] Fisher, 132 Wn. App. at 31 (quoting Luvene, 118 Wn.2d at 833).

store, contain, conceal, inject, ingest, inhale, or otherwise introduce into the human body a controlled substance." (Emphasis added.)

Snohomish County Code (SCC) 10.48.020 states,

> It is unlawful for any person to use, or to possess with intent to use, any item of drug paraphernalia to plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain, conceal, inject, ingest, inhale, or otherwise introduce into the human body a controlled substance in violation of this act.

(Emphasis added.)  Levinson asks us to depart from our holding in State v. Fisher,[5] in which we held that RCW 69.50.608 does not preempt SCC 10.48.020. We explained,

> RCW 69.50.608 preempts only the setting of penalties for acts that violate the Act.  SCC 10.48.020 is not inconsistent with the Act merely because it criminalizes possession of drug paraphernalia with intent to use and the state law does not.  For this reason, the Act does not preempt the nonpenalty portion of SCC 10.48.020.[6]

Although Levinson contends that we "glossed over" the prohibition on enacting ordinances inconsistent with state law, we find no basis to stray from our analysis in Fisher.  Therefore, we follow Fisher's holding.  Because SCC 10.48.020 does not conflict with RCW 69.50.608, probable cause a violation of the county code occurred would provide a sufficient basis for a search warrant.

Levinson also alleges,

> Levinson initially rebuffed the officer's request for consent to search Levinson's motel room.  They had a long conversation in which the officer tried to convince Levinson to agree to the search.

---

[5] 132 Wn. App. 26, 31, 130 P.3d 382 (2006).
[6] Fisher, 132 Wn. App. at 31 (internal citation omitted).

No. 69035-3-I / 5

Levinson consented only after the officer asserted that he had seen enough from observing a pipe on a bed to "write a search warrant." By pressuring Levinson to consent to the search in the absence of a warrant, based on the coercive and threatening claim that he could obtain a search warrant anyway, and in light of Levinson's undisputed reluctance to consent to the search, the officer did not obtain Levinson's valid and voluntary consent.

We disagree.

We review the denial of a motion to suppress evidence to determine if substantial evidence supports the challenged findings of fact and if those findings support the trial court's conclusions of law.[7] Substantial evidence is evidence "sufficient to persuade a fair-minded, rational person of the truth of the matter asserted."[8] Unchallenged findings of fact are verities on appeal.[9] We review the trial court's conclusions of law de novo.[10] "We defer to the trial court's credibility determinations."[11]

Article I, section 7 of the Washington State Constitution prohibits a warrantless search, subject to a limited set of exceptions.[12] "Consent is

---

[7] State v. MacDicken, 171 Wn. App. 169, 173, 286 P.3d 413 (2012) (citing State v. Ross, 106 Wn. App. 876, 880, 26 P.3d 298 (2001)), review granted, 177 Wn.2d 1004 (2013).

[8] MacDicken, 171 Wn. App. at 173 n.4 (citing State v. Levy, 156 Wn.2d 709, 733, 132 P.3d 1076 (2006)).

[9] In re Marriage of McDermott, No. 69107-4-I, 2013 WL 3756504, at *7 (Wash. Ct. App. July 15, 2013) (citing In re Estate of Jones, 152 Wn.2d 1, 8, 93 P.3d 147 (2004)), petition for review filed, No. 89196-6 (Wash. Aug. 20, 2013).

[10] Keene Valley Ventures, Inc. v. City of Richland, 174 Wn. App. 219, 224, 298 P.3d 121 (2013) (citing Robel v. Roundup Corp., 148 Wn.2d 35, 42, 59 P.3d 611 (2002)), petition for review filed, No. 89072-2 (Wash. July 15, 2013).

[11] Keene Valley Ventures, 174 Wn. App. at 224 (citing Thorndike v. Hesperian Orchards, Inc., 54 Wn.2d 570, 575, 343 P.2d 183 (1959); Quinn v. Cherry Lane Auto Plaza, Inc., 153 Wn. App. 710, 717, 225 P.3d 266 (2009)).

[12] MacDicken, 171 Wn. App. at 174 (citing State v. Garvin, 166 Wn.2d 242, 249, 207 P.3d 1266 (2009)).

recognized as an independent basis for a warrantless search."[13]   The exclusionary rule prohibits the State from presenting evidence seized during an illegal search in its case in chief.[14]   For consent to be valid, a person must consent freely and voluntarily.[15]   If the defendant challenges the free and voluntary character of the consent, the State must show by clear and convincing evidence that the person consented freely and voluntarily, not as a result of duress or coercion.[16]   Clear and convincing evidence exists when the evidence shows that the ultimate fact at issue is highly probable.[17]

A court determines if consent is free and voluntary as a question of fact based upon the totality of the circumstances, including (1) if police gave Miranda warnings before obtaining consent, (2) the consenting person's degree of education and intelligence, and (3) if the police advised the consenting person of the right to refuse consent.[18]   No single factor is determinative.[19]   The court may

---

[13] State v. Tyler, ___ Wn.2d ___, 302 P.3d 165, 174 (2013).

[14] MacDicken, 171 Wn. App. at 174 (citing State v. Gaines, 154 Wn.2d 711, 716-17, 116 P.3d 993 (2005)).

[15] State v. O'Neill, 148 Wn.2d 564, 588, 62 P.3d 489 (2003).

[16] O'Neill, 148 Wn.2d at 588; State v. Smith, 115 Wn.2d 775, 789, 801 P.2d 975 (1990) (citing State v. Nelson, 47 Wn. App. 157, 163, 734 P.2d 516 (1987)).

[17] In re Dependency of K.S.C., 137 Wn.2d 918, 925, 976 P.2d 113 (1999).

[18] State v. Dancer, 174 Wn. App. 666, 676, 300 P.3d 475 (2013) (citing State v. Reichenbach, 153 Wn.2d 126, 132, 101 P.3d 80 (2004)), petition for review filed, No. 88895-7 (Wash. June 3, 2013).  In Ferrier, 136 Wn.2d at 118-19, our Supreme Court held that article I, section 7 of the Washington Constitution requires police officers to inform a person who is consenting to a search of his or her home that he or she may lawfully refuse consent, limit the scope of the search, and revoke consent at any time, and that the failure to provide the warnings before entering the home vitiates any later consent. State v. Kennedy, 107 Wn. App. 972, 977, 29 P.3d 746 (2001), extended these requirements to a search of a motel room.

also consider other factors, including if the person was cooperative or initially refused consent,[20] if law enforcement had to request consent repeatedly,[21] and if the defendant was restrained.[22] Although knowledge of the right to refuse consent is relevant, it is not necessary to a valid consent.[23]

In ruling on Levinson's motion to suppress the evidence, the court considered testimony from Robinson and Levinson, as well as counsel's arguments and memoranda. In denying this motion, the trial court found the issue "to mainly be one of credibility" and concluded, "The Court did not find the defendant to be credible in his testimony and found no issues with Deputy Robinson's credibility."

Levinson challenges three of the court's factual findings, claiming that they "are either misleading or not supported by substantial evidence." First, he challenges the finding, "Deputy Robinson's observation that the pipe was used to smoke methamphetamine was grounded in his training and his experience." Levinson contends, "To the extent this finding implies Robinson had a basis to infer Levinson had used the pipe to smoke methamphetamine, it is not supported by substantial evidence." Levinson's argument relates back to his claim that RCW 69.50.608 preempts SCC 10.48.020—which, again, criminalizes possession of drug paraphernalia with intent to use and not just the use of drug

---

[19] Dancer, 174 Wn. App. at 676 (citing Smith, 115 Wn.2d at 789).
[20] Dancer, 174 Wn. App. at 676 (citing State v. Flowers, 57 Wn. App. 636, 645, 789 P.2d 333 (1990)).
[21] Dancer, 174 Wn. App. at 676 (citing O'Neill, 148 Wn.2d at 589).
[22] Dancer, 174 Wn. App. at 676 (citing O'Neill, 148 Wn.2d at 589).
[23] Nelson, 47 Wn. App. at 163.

paraphernalia. Robinson testified that he has worked in law enforcement for six years, that he encounters drug paraphernalia "weekly," that he was not aware of any lawful purpose for this type of pipe, and that he was not aware of any other controlled substance besides methamphetamine that a person would smoke in this type of pipe. Because we hold that SCC 10.48.020 is valid and we defer to the trial court's credibility determinations, Levinson's argument fails.

Second, Levinson challenges the court's finding that he "basically acknowledged that the meth pipe that the Deputy saw through the motel window was in fact a meth pipe." He asserts, "This finding implies that Levinson told Robinson the pipe was a 'meth pipe' but this implication is not supported by substantial evidence" and that "[a]t no time did Robinson claim that before the search, Levinson made any admissions of his culpability of any criminal conduct." Levinson has never denied that the pipe was the type used to smoke methamphetamine. At the hearing on the motion to suppress the evidence, he testified,

> Q    How was he answering your questions? I mean, you had several questions about what he could do. What sort of answers were you getting?
>
> A    Just kind of that he was going to come in, and he had the ability to because he had a probable cause because of seeing the—whatever evidence you guys had missed.
>
> Q    The meth pipe?
>
> A    Yeah. Whatever.
>
> Q    O.K. And that was, in fact, sitting right on the bed there, wasn't it?

A    Yeah.  That was.

Because we defer to the trial court's credibility determinations and this testimony supports the court's finding that Levinson "basically acknowledged" that the pipe was the type used to smoke methamphetamine, we reject his claim.

Third, Levinson challenges the court's finding, "The discussion between the defendant and Deputy Robinson surrounding permission to search did not go beyond the officer's ability to get a search warrant."  He argues that "to the extent this finding is supposed to represent the entirety of the conversation between Levinson and Robinson, it is erroneous" because "[n]either Robinson nor Levinson recounted the conversation in detail."  Again, the court found Robinson's testimony credible but did not find Levinson's testimony credible.  Robinson testified that he told Levinson he had probable cause to write a search warrant, that before Levinson consented he addressed Levinson's concern about going to jail, and that he gave proper Miranda and Ferrier warnings.  Because nothing in Robinson's testimony indicates that the discussion went beyond his ability to get a search warrant, we also reject this claim.

Levinson compares this case to State v. O'Neill.[24]  In that case, a police officer asked O'Neill for consent to search his car.  O'Neill said "no" and said that the officer needed a warrant.[25]  The officer told O'Neill that he did not need a warrant but that he could simply arrest O'Neill for drug paraphernalia that he saw

---

[24] 148 Wn.2d 564, 62 P.3d 489 (2003).
[25] O'Neill, 148 Wn.2d at 573.

on the floorboard and search the car incident to the arrest.[26] The officer continued to ask for consent until O'Neill eventually consented.[27] The court found no valid consent to search O'Neill's car.[28] The court concluded that the officer restrained O'Neill's liberty because he was not free to leave, O'Neill refused continuously to grant consent, and that "[o]nly after Sergeant West repeatedly pressed the issue did O'Neill relent and give consent."[29] Additionally, "the only reason for the representations that he could and would simply arrest O'Neill and search incident to arrest if he did not obtain consent was to obtain that consent."[30]

Here, nothing in the record indicates that Levinson's consent was involuntary. The record shows that Levinson waived his Miranda rights and that Robinson informed him of his right to refuse, limit, or revoke consent. Levinson testified that he was "very hesitant" to grant consent and that he was "going to be sure of it" because he had "been in quite a few different situations where I've given consent and then later regretted it," and that he could not recall details of the conversation. Robinson testified that their conversation pertained to Levinson's concern about going to jail. Robinson told Levinson that he did not intend to take Levinson to jail, although he could not make any promises, and that he had probable cause to write a search warrant based upon his observation

---

[26] O'Neill, 148 Wn.2d at 573.
[27] O'Neill, 148 Wn.2d at 573.
[28] O'Neill, 148 Wn.2d at 591.
[29] O'Neill, 148 Wn.2d at 589.
[30] O'Neill, 148 Wn.2d at 589.

of the pipe. The record establishes that Levinson was cooperative, and no evidence suggests that Robinson requested consent repeatedly.

In O'Neill, the court "acknowledge[d] that not every advisement of authority to search in the absence of consent vitiates any consent given."[31] The court distinguished Commonwealth v. Mack,[32] a Pennsylvania case in which police officers advised the appellant, truthfully, of the consequences of refusing permission by stating that the appellant could decline permission to search and that the officers would have to obtain a warrant if she denied permission.[33] Here, the record indicates that Robinson advised Levinson he had probable cause to write a search warrant but did not threaten to obtain a search warrant or tell Levinson that he had a search warrant.[34] Robinson testified that he did not "want it to be coercive and make them, you know, basically give me consent to enter the room on the basis of I'm going to get a search warrant anyway." He further testified that Levinson at no point sought to stop the search. The court also concluded, "The room was lit. It was dark outside. And the pipe was in plain view. I frankly think that would have given the officer probable cause to arrest the occupants of the room, and it certainly would have given enough basis for the officer to request a search warrant." Levinson testified that Robinson told him he had authority to conduct a walk-through to look for the wanted individual, that

---

[31] O'Neill, 148 Wn.2d at 590.
[32] 568 Pa. 329, 796 A.2d 967, 970-71 (2002).
[33] O'Neill, 148 Wn.2d at 590.
[34] See Smith, 115 Wn.2d at 790.

Levinson could stop him at any time, and that Robinson ignored his request to stop. We defer to the trial court's determination that Levinson's testimony about the walk-through was not credible because a walk-through would have been unnecessary, Robinson had no reason to question Levinson's statement that he did not know the wanted individual, and Robinson had no reason to believe that the wanted individual was in the small motel room. Because nothing in the record supports Levinson's allegations that Robinson coerced him into consenting to the search, we reject his claim.

## Conclusion

Because substantial evidence supports the trial court's finding that Levinson consented voluntarily to the search of his motel room, we affirm.

_Leach, C.J._

WE CONCUR:

_____                    _____