IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 33048-6-III |
| Respondent, | ) | |
| | ) | ORDER AMENDING OPINION |
| v. | ) | |
| | ) | |
| JONATHAN M. HAAG, | ) | |
| | ) | |
| Appellant. | ) | |

IT IS ORDERED the opinion filed April 27, 2017, is amended as follows:

In the last sentence on page seven, "Mr. Graham" shall be replaced with "Mr. Haag."

PANEL: Judges Korsmo, Siddoway and Pennell

FOR THE COURT:

_____
GEORGE FEARING
Chief Judge

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 33048-6-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| JONATHAN M. HAAG, | ) | |
| | ) | |
| Appellant. | ) | |

PENNELL, J. — Jonathan Haag was convicted of possession of a controlled

substance, methamphetamine, after a stipulated facts bench trial. We affirm.

FACTS

Mr. Haag's arguments on appeal pertain to the trial court's denial of his motion to

suppress evidence. An evidentiary hearing was held on the matter. At the hearing,

Officer Amy Woodyard of the Spokane Police Department testified that, while on routine

patrol, she observed a gold Saturn vehicle diagonally blocking the lane ahead of her

patrol car. She slowed her patrol car and realized the Saturn was "backed up to the curb as though it had stalled on the hill and rolled back into the curb." Verbatim Report of Proceedings (VRP) (Nov. 25, 2014) at 16. The vehicle's brake lights were going on and off and it was lurching forward. Then the car started up and returned to the lane of travel as Officer Woodyard approached in her patrol car.

While the vehicle was still directly in front of Officer Woodyard, she noticed it did not have a license plate but did have a trip permit in the rear window. She testified the trip permit was "horribly forged or altered." *Id.* at 17. Officer Woodyard based this belief on her experience dealing with other forged and invalid trip permits during the course of her work with the police department. She stated certain numbers on the trip permit looked like they "had been turned to other numbers not very well. Like a five would be turned to an eight . . . by making it more square rather than a circle . . . ." *Id.* at 18. She added, "It was almost like . . . somebody had gone back over it and had deliberately tried to change the numbers from what they previously might have been." *Id.*

Because the vehicle did not have a license plate, Officer Woodyard utilized her police computer to access a listing of stolen vehicles. A gold Saturn was on the list. Without a license plate, the only way to confirm the vehicle in the lane ahead of her was the same as the one on the stolen vehicle list was by comparing the vehicle identification

numbers (VIN). Dispatch is unable to check the validity of trip permits.

Officer Woodyard followed the vehicle for approximately four to five blocks and then initiated a traffic stop. She testified she had several reasons for stopping the vehicle besides determining whether it was stolen. She wanted "to see if the driver needed some assistance if the vehicle was out of gas or what were the circumstances for it being stopped blocking the roadway, the trip permit, [and] the validity of the registration." *Id.* at 27. After approaching the vehicle, Officer Woodyard read the VIN from the dashboard through the windshield. Approximately three minutes after stopping the vehicle, Officer Woodyard confirmed with dispatch that the VINs for the vehicle she stopped and the stolen vehicle on the list were the same.

Two minutes later backup arrived, and Mr. Haag was removed from the car, handcuffed, and patted down for weapons. Officer Woodyard did not issue a citation for a forged trip permit. She testified that it was uncommon for her to write tickets for traffic infractions. The trial court denied the motion to suppress and entered written findings of fact and conclusions of law.

Mr. Haag waived his right to a jury trial and the case proceeded to a bench trial with stipulated facts. The parties stipulated that during the pat down, Officer Woodyard felt a dice-sized item in Mr. Haag's front pocket and asked permission to remove it. Mr.

Haag consented. The item was a plastic baggy containing a pea-sized white substance, which was later confirmed as methamphetamine.

After the bench trial, the court made an oral ruling finding Mr. Haag guilty of possession of a controlled substance. The court did not enter written findings of fact and conclusions of law following the trial, but did enter a judgment and sentence reflecting the guilty verdict. Mr. Haag appealed.

On June 20, 2016, we directed the trial court to enter written findings of fact and conclusions of law pertaining to Mr. Haag's bench trial. The findings and conclusions were filed in the trial court on July 15, added to the record on appeal and the parties subsequently filed supplemental briefing.

## ANALYSIS

*Motion to suppress evidence*

Generally, "warrantless searches and seizures are per se unreasonable, in violation of the Fourth Amendment to the United States Constitution and article I, section 7 of the Washington Constitution." *State v. Garvin*, 166 Wn.2d 242, 249, 207 P.3d 1266 (2009). One of the narrow exceptions to the warrant requirement is a *Terry*[1] investigative stop, which "authorizes police officers to briefly detain a person for questioning without

---

[1] *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

4

grounds for arrest if they reasonably suspect, based on 'specific, objective facts,' that the person detained is engaged in criminal activity or a traffic violation." *State v. Day*, 161 Wn.2d 889, 896, 168 P.3d 1265 (2007) (quoting *State v. Duncan*, 146 Wn.2d 166, 172, 43 P.3d 513 (2002)).

A law enforcement officer may conduct a warrantless traffic stop under *Terry* when they have a reasonable articulable suspicion that a traffic violation has occurred or is occurring. *State v. Ladson*, 138 Wn.2d 343, 349, 979 P.2d 833 (1999). But our state constitution prohibits pretext stops. A law enforcement officer may not capitalize on a minor traffic violation in order to engage in a fishing expedition for information about other crimes, for which there is no basis to stop or search. *Id.* at 358-59.

Mr. Haag claims Officer Woodyard's vehicle stop was pretextual because her true motivation was to investigate the possibility of a stolen vehicle, not to follow up on various traffic violations. We disagree with this characterization. The trial court had substantial evidence for concluding Officer Woodyard did not stop the vehicle solely because she suspected it was stolen. Officer Woodyard was able to observe that the vehicle had an altered trip permit and she was concerned, based on the vehicle's unusual movements, the driver might be in need of assistance. These circumstances, by

5

themselves, provided an independent basis for the stop, regardless of Officer Woodyard's other motivations. *State v. Chacon Arreola*, 176 Wn.2d 284, 297-98, 290 P.3d 983 (2012). ("a traffic stop is not unconstitutionally pretextual so long as investigation of either criminal activity or a traffic infraction (or multiple infractions), for which the officer has a reasonable articulable suspicion, is an actual, conscious, and independent cause of the traffic stop").

In upholding the trial court's decision, we note that Officer Woodyard's suspicions about the vehicle were not overly generalized, as is often true in the context of invalid pretext stops. Officer Woodyard had more than simply a hunch that the vehicle was stolen. While not amounting to probable cause, the blatantly forged trip permit, coupled with the fact that the vehicle make and color matched a listed stolen vehicle, likely provided Officer Woodyard with reasonable suspicion to conduct a *Terry* investigation. *See State v. Sandholm*, 96 Wn. App. 846, 848, 980 P.2d 1292 (1999) (probable cause to arrest when dispatch information, coupled with physical evidence, suggested vehicle was stolen).[2] We do not rest our holding on this basis since it has not been briefed. Nevertheless, it appears Officer Woodyard's decision to stop Mr. Haag's vehicle was not

---

[2] Because Officer Woodyard did not merely rely on the stolen vehicle report, this case is distinguishable from *State v. O'Cain*, 108 Wn. App. 542, 31 P.3d 733 (2001).

6

even partially based on invalid motives.

*Written findings of fact and conclusions of law*

While the trial court initially failed to enter written findings of fact and conclusions of law after Mr. Haag's bench trial, this error has since been remedied. In his supplemental brief to the court, Mr. Haag takes issue with the adequacy of the court's posttrial findings. His criticisms are not well taken. The trial court's findings were based on Mr. Haag's own stipulated facts. Mr. Haag cannot now take issue with those facts. *State v. Ellison*, 172 Wn. App. 710, 715-16, 291 P.3d 921 (2013). Mr. Haag's supplemental brief also challenges the trial court's findings because they support the trial court's conclusion that the vehicle stop was warranted. As set forth above, we reject this contention.

## APPELLATE COSTS

By motion filed June 3, 2016, Mr. Haag requests this court not award appellate costs should the State prevail on appeal. Because Mr. Haag has not complied with our general order, requiring a report of continued indigency, we deny his request at this juncture. If the State seeks costs, Mr. Graham may attempt to seek relief under RAP 14.2.

No. 33048-6-III
*State v. Haag*

## CONCLUSION

We affirm the judgment and sentence of the trial court.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

_____
Pennell, J.

WE CONCUR:

_____
Korsmo, J.

_____
Siddoway, J.

8