[No. 14947. Department One. December 13, 1918.]

PIERCE COUNTY, *on the Relation of Thomas H. Belling-ham et al., County Commissioners of Pierce County, Respondent,* v. J. J. DUFFY *et al., Appellants,* JOHN AUGUST ABRAHAMSON *et al., Respondents.*[1]

EVIDENCE (103-108)—HEARSAY—EXPERTS. The evidence of experts on land values is inadmissible and prejudicial where their estimates, as far as timber and improvements were concerned, were based on the estimates of other experts who were not called to testify.

TRIAL (39)—EVIDENCE—MOTION TO STRIKE. A motion to strike all the testimony of experts on land values, admittedly based in part on hearsay, is not too general because of the inclusion of proper preliminary testimony which was material only as associated with the valuations.

APPEAL (142)—PRESERVATION OF GROUNDS—EXCEPTIONS—INSTRUCTIONS. Error in orally instructing the jury is waived by the failure to take an exception to the giving of oral instructions at the time.

EMINENT DOMAIN (76)—MEASURE OF DAMAGES—BENEFITS FROM IMPROVEMENT. Upon condemnation for an army post, the measure of damages is the fair cash market value of the property without regard to any benefits that may result from the establishment of the post.

[1]Reported in 176 Pac. 670.

Appeal from a judgment of the superior court for Pierce county, Clifford, J., entered March 20, 1918, upon the verdict of a jury awarding damages in condemnation proceedings. Reversed.

*A. R. Titlow* and *Clayton Chapman,* for appellants.

*Fred G. Remann* and *J. T. S. Lyle (Scott Z. Henderson* and *Robert M. Davis,* of counsel), for respondent.

MITCHELL, J.—Pierce county is condemning about 35,000 acres of land for an army post at Camp Lewis, as provided for in ch. 3, Laws of 1917, p. 2. An order adjudicating the public use and necessity was duly entered, and the cause set for trial to a jury to determine the compensation to be paid the landowners. For convenience the lands were divided into groups, twenty-five to fifty parcels of land belonging to different owners being considered in a group, and awards made by the jury accordingly. The trial as to one of these groups involved 200 acres belonging to appellants, J. J. Duffy and wife. At the commencement of the trial, the court, with the consent of all parties, adopted a rule on the question of ultimate values, limiting the number of expert witnesses on each side to three. There was a verdict and judgment, from which, as to their property, Duffy and wife appeal.

The first assignment of error is the denial of the trial court to strike certain testimony of the petitioner's witnesses. The three expert witnesses of the petitioner were Edmund Rice, S. R. Balkwill and J. C. Taylor, all of whom were shown to have personally examined the Duffy lands and to be well qualified to testify as to market values generally. These three witnesses testified with reference to the value of the different parcels in the group, and on reaching the Duffy tract, each of them testified that he was familiar

with it and knew its market value to be $5,306.15. Edmund Rice further testified as follows:

"Q. How much was the amount of the timber value on the Duffy place? A. $499.47. Q. Now you are testifying as far as timber and improvement values are concerned, not as an expert? A. I did not make the inventory of the timber or buildings. I took them as they were given by the experts who did make them."

Counsel for appellants then moved to strike the entire testimony of the witness on the ground that it was incompetent and hearsay. The motion was denied and an exception taken. After the witness Balkwill testified with reference to the market value of this land, he admitted under cross-examination: "The total value included the value of improvements made by other people. I accepted their figures as to the values of that property." After the witness Taylor testified as to the market value of this land, under cross-examination he said:

"Q. In your valuation you gave of $5,306.15 did you include any improvements? A. The amounts the builders gave us for the cost of the improvements and the amounts the timber cruisers gave us as to the value of the timber, were added to the valuations. Q. In other words, you have taken the estimates or word of someone else for the different values and added to your valuations and placed in your testimony here? A. Yes, sir."

After a few unimportant questions to the witness Balkwill, the county rested its case as to the Duffy tract, not having called any witness who had valued the improvements or timber whose estimates the three experts had referred to and relied upon. Whereupon, counsel for appellants interposed a motion as follows:

"On behalf of Mr. and Mrs. Duffy, the county having rested their case and not having supported the testimony of Mr. Balkwill, Mr. Rice and Mr. Taylor,

as to the timber and improvements, that being inter-
mingled with the other and being purely hearsay, we
move to strike out each and all of the testimony of
these three witnesses, Balkwill, Rice and Taylor.''

The motion was denied and an exception taken.

It is to be noticed that these witnesses, whose gen-
eral qualifications are not questioned, do not say that
they have learned from others the amount and value
of the timber and the value of improvements and that
they simply took the improvements and timber into
consideration in a general way in fixing the value upon
the whole of the property, but they say they relied
upon values fixed by others upon improvements and
timber, which values constituted a part of the total
value fixed by each of the witnesses. Or, as one of
them puts it: ''The total value included the value of
improvements made by other people. I accepted their
figures as to the value of that property.'' It is true
that the motion to strike covered all the testimony of
the witness or witnesses and not simply their esti-
mates of market value, but the testimony relating to
their experience and general qualifications, while
proper testimony, was only to show qualification to
testify as to market value, which was the ultimate
and only question for the jury. The inclusion of
proper preliminary testimony does not destroy the
efficacy of the motion if the testimony as to value alone
should yield to such a motion directed simply to it,
for the reason that the preliminary testimony would
be immaterial and unavailing for any purpose except
as it is associated with and supports the testimony as
to market value. Nor can it be said that the motion,
on account of its generality, included the testimony of
the witnesses with reference to the lands of others in
the group being considered by the jury, for it was
made at the time of the taking of testimony concern-

ing the Duffy land, by the attorney for the Duffys, and finally specifically stated to be in their behalf and name.

The evidence moved against was highly prejudicial and should have been stricken. It did not derive its value solely from the credit to be given to the witnesses themselves, but rests also, in substantial part, on the veracity and qualifications of some other person or persons, not exposed to cross-examination in court nor speaking under the sanction of an oath. The denial of the motion to strike the evidence constitutes reversible error.

After the court instructed the jury in writing, at the request of the petitioner, an oral instruction was given as follows:

"I have instructed you that the burden of proof is upon the county to establish the fair market value of the property. There should be an exception to that. Where it is claimed that land has a particular value on account of some particular circumstances, the burden is upon the party asserting that particular circumstance to establish such fact as giving value to the land."

Appellants claim it was error to orally instruct the jury. Not having taken an exception to the giving of the instruction orally at the time it was given, appellants are to be considered as having waived the manner of giving it. *Taylor v. Kidd,* 72 Wash. 18, 129 Pac. 406.

Two other assignments of error may be considered together. They relate to two instructions concerning the measure of damages, as follows:

"Under the provisions of our constitution, and the provisions of our statutes, the measure of damage is the true, fair cash market value of the land taken, without regard to any benefits that may result from

the construction or establishment, or the proposed construction or establishment of an army post.

"You are instructed that you are to find the present fair cash market value of the property, as heretofore defined, and that in ascertaining such value, nothing is to be added thereto, by reason of any benefits accruing from the location, construction and maintenance of the army post. That is to say, you are to determine the present fair cash market value of the property, as if the mobilization, training and supply station, commonly called the Army Post, had not been located and constructed on the lands."

These instructions clearly state the law. They are supported by reason and authority. All of appellants' property is being taken for a purely public use, and there is no foundation for the fanciful theory that the taking of all of one's lands for a public use shall or can redound to the advantage of the owner by means of any supposed or contemplated increase in value flowing from the establishment and maintenance of such public improvement.

"If it is known from the very first exactly where the improvement will be located, if it is constructed at all, property that will be required for its site will not participate in the rise or fall in values, for since such property is bound to be taken if the improvement is constructed, it can never by any possibility either suffer from or enjoy the effects of the maintenance of the public work in its neighborhood; and consequently it is well settled that in such case in valuing the land the effect of the proposed improvement upon the neighborhood must be ignored." 1 Nichols, Eminent Domain (2d ed.), § 221; 10 R. C. L. 131, § 115, note 19.

The United States supreme court announced the same rule in the case of *Kerr v. South Park Commissioners*, 117 U. S. 379, as follows:

"In the nature of things the lands within the proposed park, and which were to constitute it, could not

have been thus specially benefited; and the owner of the lands in question should be allowed nothing on the ground that his property was thus specially benefited."

See, also, *San Diego Land & Town Co. v. Neale,* 78 Cal. 63, 20 Pac. 372, 3 L. R. A. 83; *Smith v. Commonwealth,* 210 Mass. 259, 96 N. E. 666, Ann. Cas. 1912C 1236; *St. Louis Elec. Terminal R. Co. v. MacAdaras,* 257 Mo. 448, 166 S. W. 307.

Further claims of error are predicated upon alleged misconduct of the trial judge in criticizing appellants' counsel, and again in the examination by the court of one of appellants' witnesses in such a way, it is contended, as to discredit the witness, both occurring during the trial, in the presence of the jury. It is apparent, however, that neither of such incidents will occur in another trial, and hence need not be further noticed here.

The judgment is reversed, and the cause remanded for a new trial.

Main, C. J., Chadwick, Tolman, and Mackintosh, JJ., concur.