[Nos. 5628–7–III; 5629–5–III. Division Three. December 18, 1984.]

THE STATE OF WASHINGTON, *Respondent*, v. JOSEPH W. TEMPLEMAN, ET AL, *Defendants*, BROADMOOR PARK, INC., *Appellant.*

THE STATE OF WASHINGTON, *Respondent*, v. METROPOLITAN MORTGAGE AND SECURITIES CO., INC., ET AL, *Defendants*, BROADMOOR PARK, INC., *Appellant.*

*Andrew C. Bohrnsen, George Fearing,* and *Leavy, Schultz & Sweeney, P.S.,* for appellant.

*Kenneth O. Eikenberry, Attorney General,* and *John T. Hurley* and *Michael A. Nicefaro, Jr., Assistants,* for respondent.

MUNSON, C.J.—In this eminent domain proceeding, Broadmoor Park, Inc. (formerly Desert Hills, Inc.) appeals a judgment entered on a jury verdict of zero dollars ($0) as just compensation. It contends certain jury instructions relating to special benefits and enhanced value were prejudicially erroneous, and it contends its proposed burden of proof instruction should have been given. The State cross-appeals, challenging certain evidentiary rulings. We affirm.

This action arose out of construction of State Route 182 in the Tri-Cities and involves two parcels of land. In the "before" situation, the "Metropolitan Mortgage" parcel consisted of 465.91 acres of sagebrush, sand dunes, and a dirt road. It was zoned agricultural, but there was insufficient water on the property for irrigation and no utilities. The State condemned 65.25 acres for the highway project. Shortly before trial, the property was annexed to the City of Pasco and zoned partly commercial and partly "holding zone".[1] In the "after" situation, a limited access highway will run across the property, but one-half of an interchange will rest on the property. Also, Road 100, which provides the western border of the property, will be improved and the property will have 700 feet of unlimited access frontage on it.

The "Templeman" parcel consisted of 18.43 acres in the "before" situation. The terrain and zoning for the before situation were the same as for the Metropolitan Mortgage parcel, except the Templeman property was landlocked and had no water on it. The State condemned 1.48 acres for improvements to Road 100, which will connect approximately 700 feet to the north with the new State Route 182 interchange on the Metropolitan Mortgage parcel. Annexation and rezoning of the Templeman parcel took place at the same time as the Metropolitan Mortgage property. In the "after" situation, the Templeman property will have 1,200 feet of frontage along the improved Road 100, which

---

[1] See *Richland v. Franklin Cy. Boundary Review Bd.*, 100 Wn.2d 864, 676 P.2d 425 (1984) (approving annexation of this property by the City of Pasco).

consists of the property's eastern border.

Broadmoor Park, Inc., purchased both parcels by real estate contract in 1975. Its senior vice–president, Mr. Arambel, testified just compensation for the Templeman parcel would be $8,888 and just compensation for the Metropolitan Mortgage parcel would be $402,000. The State's expert, on the other hand, believed both parcels would be benefited by the State Route 182 and Road 100 improvements, annexation and rezone; he testified the Metropolitan Mortgage parcel would be worth $2,927,740 more and the Templeman parcel worth $298,960 more in the after situation. His opinion was therefore that just compensation would be $0. The jury found just compensation for the takings on both parcels to be $0.

Broadmoor Park, Inc., first contends the trial court erred in giving instruction 12:

> If you find that the fair market value of the property in the after situation has been increased as a result of the I–182 facilities, then that increase is a special benefit.

Broadmoor Park, Inc., argues a special benefit must be peculiar to the condemnee's property; therefore, an increase in fair market value cannot be a special benefit. In the alternative, it concedes certain special benefits but argues the jury could have erroneously concluded the general benefit of decreased travel times between the Tri–Cities increased the fair market value of the subject property.

RCW 8.04.080 defines just compensation in an eminent domain action as compensation for the land taken plus any injury to the remaining land, after offsetting against such award any special benefits accruing to the remainder by reason of the State's use of the land taken. "Special benefits" were defined in instruction 10, to which no objection was made or error assigned:

> The benefits, if any, which may be offset are those which accrue to the remainder of the property because of the construction of the highway project and are special to the remaining property.
>
> Special benefits are those which add value or conve-

nience to the remaining property as distinguished from those arising incidentally and enjoyed by the public generally. Benefits may be special even though other owners received similar benefits. [WPI 150.07.01]

*Accord, State v. Green,* 90 Wn.2d 52, 578 P.2d 855 (1978); *State v. Kelley,* 108 Wash. 245, 182 P. 942 (1919); *Spokane Traction Co. v. Granath,* 42 Wash. 506, 85 P. 261 (1906). In *Spokane Traction Co. v. Granath, supra,* the court held that a new bridge and highway improvements could constitute a special benefit to an abutting owner, regardless of whether there are several abutting owners enjoying like benefits. Only special benefits need be defined for the jury; it is not necessary to define general benefits and then instruct the jury to disregard them. *State v. Kelley, supra.*

Jurisdictions differ on whether increase in fair market value as a result of a highway improvement constitutes a special benefit. Annot., *Eminent Domain: Deduction of Benefits in Determining Compensation or Damages in Proceedings Involving Opening, Widening, or Otherwise Altering Highway,* 13 A.L.R.3d 1149 (1967); 3 J. Sackman, *Nichols on Eminent Domain* § 8.6203, at 8–168 to 8–170 (3d rev. ed. 1981). However, *Spokane Traction Co. v. Granath, supra,* allows an offset for such increased value.

Broadmoor Park, Inc.'s contention the jury could have erroneously considered the general benefit of decreased travel times between the Tri–Cities is without merit. No witness testified general facilitation of travel between cities would result in a special benefit or increased fair market value to either parcel. We find no error in the giving of instruction 12.

Broadmoor Park, Inc., next contends the trial court erred in giving instruction 11:

Any increase in the fair market value of the real property to be acquired prior to the date of valuation caused by the public improvement for which such property is acquired will be disregarded in determining the compensation for the property.

Broadmoor Park, Inc., concedes instruction 11 correctly

states Washington law. *Pierce Cy. ex rel. Bellingham v. Duffy,* 104 Wash. 426, 176 P. 670 (1918). However, Broadmoor Park, Inc., urges us to disregard *Duffy,* and invoke what it perceives to be the principles of fairness annunciated in *Lange v. State,* 86 Wn.2d 585, 547 P.2d 282 (1976).

*Duffy* was cited with approval in *Lange v. State, supra,* wherein the court held an increase or decrease in value resulting from the prospect of condemnation should be disregarded in computing just compensation for the land taken. *Lange v. State, supra* at 591. This principle also appears in RCW 8.26.180(3), relocation assistance—real property acquisition policy. Likewise, rezoning which is the result of a proposed improvement cannot be considered in valuing the land taken. *State v. Kruger,* 77 Wn.2d 105, 459 P.2d 648 (1969); *State v. Sherrill,* 13 Wn. App. 250, 534 P.2d 598, *review denied,* 86 Wn.2d 1002 (1975).

Broadmoor Park, Inc., also contends the price for the parcels was already inflated due to the proposed highway project when it bought them in 1975. Thus, instruction 11 forced it to "pay twice" for the enhanced value of the property taken: once when it purchased the land and a second time when it was denied the full market price in these proceedings. The jury received no evidence of the 1975 purchase price, because Broadmoor Park, Inc., insisted the evidence be excluded. Mr. Arambel did state, however, he bought the parcels before they were ready to be developed. There was considerable testimony regarding the annexation, rezone, and city plans to extend utilities to the property, all taking place after 1975, and that these events were a direct result of the proposed highway project. Broadmoor Park, Inc., may have "lost" its purchase price per acre for the 66.73 acres taken, but the after value of its land has increased sevenfold due to the State's "improvements".

Instruction 11 correctly states Washington law and there was substantial evidence to justify its submission to the jury.

Finally, Broadmoor Park, Inc., contends the trial court erred in refusing to give proposed instruction 10:

The burden of establishing the existence and value of special benefits, if any, lies with the State of Washington. Broadmoor Park, Inc., argues that, while jurisdictions may be split as to the burden of proof of the value of the land taken and damages to the remainder, the burden of proving special benefits clearly rests on the condemnor. 27 Am. Jur. 2d *Eminent Domain* § 419, at 310 (1966).

The trial court stated it would give Broadmoor Park, Inc.'s instruction if it could cite some supporting authority. Broadmoor Park, Inc., simply argued the proposed instruction was a correct statement of the law, not covered elsewhere, and it would be highly prejudicial not to give it. Broadmoor Park, Inc., did not state distinctly the matter to which it was objecting, the grounds of its objection, or cite any authority. *See* CR 51(f); *Crossen v. Skagit Cy.,* 100 Wn.2d 355, 669 P.2d 1244 (1983). Therefore, the claimed error has not been preserved for review.

■ Notwithstanding, *State v. Amunsis,* 61 Wn.2d 160, 377 P.2d 462 (1963) holds no burden of proof instruction should be given regarding the value of the land taken. As in other areas of eminent domain law, jurisdictions differ on this point. 27 Am. Jur. 2d *Eminent Domain* § 419, at 308–10 (1966); 5 J. Sackman, *Nichols on Eminent Domain* § 18.5, at 18–364 to 18–365 (3d rev. ed. 1984). The reason for the rule chosen by Washington is:

> "In order to raise such form of technical issue, to which rules arising out of burden of proof would apply, it would be necessary for the one party to determine upon a definite, particular proposal as to value, which definite proposal would be affirmed by one party and denied by the other. Such unusual proposal would doubtless furnish the necessary technical issue to which the technical rules applicable to burden of proof would apply; but such would be most unusual in a condemnation case, where the witnesses for the condemner, as well as for the property owner, will vary thousands of dollars as to what the fair market value of the property is at the time of the inquiry, so that the jury would have before it no definite issue to which it could logically and reasonably apply the doctrine known as 'burden of proof.'

". . . You might as well undertake to fit a hat to a headless man as to fit the doctrine of burden of proof to a proceeding of this character, which is absolutely wanting an issue to which such doctrine can be applied."

*State v. Amunsis, supra* at 163–64 (quoting *Martin v. Columbus,* 101 Ohio 1, 127 N.E. 411 (1920)).

The reasoning of *State v. Amunsis, supra,* applies to a special benefits case. The issue in *State v. Amunsis, supra,* was the value of the land taken. Here, the issue is the value of the special benefits; the existence of special benefits is conceded. The cases relied upon by Broadmoor Park, Inc., which hold the condemnor has the burden to prove special benefits rest on the general proposition that each party has the burden to prove the affirmative of an issue, and are not persuasive. *E.g., Collins v. State Hwy. Comm'n,* 145 Kan. 598, 66 P.2d 409 (1937).

The judgment is affirmed. We therefore do not address the issues raised by the State in its cross appeal.

THOMPSON, J., and HOPKINS, J. Pro Tem., concur.