IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| KEENE VALLEY VENTURES, INC., a Washington corporation, | ) ) ) | No. 30286-5-III |
| Appellant, | ) ) ) | |
| v. | ) ) | |
| CITY OF RICHLAND, a municipal corporation, | ) ) ) ) | |
| Respondent and Cross Appellant, | ) ) ) | |
| APPLEWOOD ESTATES HOMEOWNER ASSOCATION, a nonprofit Washington corporation; CHERRYWOOD ESTATES HOMEOWNER ASSOCIATION, a nonprofit Washington corporation; and GREGORY CARPENTER and LAREINA CARPENTER, husband and wife, and the marital community thereof, | ) ) ) ) ) ) ) ) ) ) ) | PUBLISHED OPINION |
| Defendants. | ) | |

KORSMO, C.J. — The trial court in this inverse condemnation action granted

nominal damages to plaintiff Keene Valley Ventures (KVV) and declined to award

attorney fees. In this appeal, KVV argues that it had no burden of proving the amount of its damages. We disagree and affirm.

## FACTS

Ron Johnson is the sole shareholder and director of Baines Corporation, as well as the sole shareholder, sole director, and president of KVV. Baines purchased 21.6 acres of undeveloped land in the City of Richland for $47,500 in 2000. KVV subsequently purchased the property from Baines in 2003 for the sum of $189,170.[1] The property is at Keene and Shockley Roads at the low point of Keene Valley in an area known as Sub-basin 3.

Richland has been developing Keene Road in stages. Part of that development included culverts that move water from south of Keene Road to ditches on the north side of the road adjacent to KVV's property. A Storm Water Management Plan (SWMP) adopted by Richland in 2005 includes two projects that involve Sub-basin 3. One project would include the creation of a retention pond in the general vicinity of KVV's property; it has not yet been designed or funded. A second project would involve piping more water to the area; that project likewise has not yet been approved by the city council.

---

[1] There was no appraisal of the land. Mr. Johnson testified at trial that his accountant set the value of the land, but there was no explanation of how that value was calculated.

Shortly after purchasing the property, Mr. Johnson discovered a large man-made wetland in the northwest corner of the KVV property. He retained a wetland scientist who determined that there were three man-made wetlands on the property. Irrigation of neighboring properties was identified as the source of the wetlands. Mr. Johnson calculated that he would need 27,000 cubic yards of dirt to fill the three wetlands. Development of the upper valley continued throughout the decade following Baines' purchase of the land. More and more water was funneled from those properties down to the bottom of the valley and, subsequently, onto KVV's property.

A geotechnical engineering study conducted for KVV in January 2005 drilled three test pits. Groundwater was located in the pits at 5.5, 7.5, and 2 feet. A different company drilled three test pits in the same general area in November 2005. It discovered groundwater at 1.1, 1.2, and 2.5 feet, respectively. The testing company recommended a five-foot fill depth on the property. Mr. Johnson calculated that recommendation would require 145,000 to 150,000 cubic yards of fill.

KVV marketed the property. It entered into an agreement to sell the land in January 2006 for $541,500. A second agreement a year later involved a purchase price of $575,000. Neither sale closed; no evidence was admitted that explained the failure of either sale to close.

3

Water regularly collected in the ditch on the north side of Keene Road. Water also would occasionally flow from the ditch onto the KVV property. Mr. Johnson wrote a letter to Richland complaining about standing water in the ditch as well as the rising water table. Richland responded by explaining that the water was routed to the Keene Road ditch by design and was consistent with the SWMP.

KVV filed suit[2] in 2008; the matter proceeded to a four-day bench trial in May 2011, and the parties filed written arguments. The trial court entered a memorandum decision the following month. The court ruled that KVV had proved trespass, nuisance, and inverse condemnation, but that the damage to the land was temporary because Richland could re-route the water to flow away from the property. The court also ruled that KVV had failed to prove that it had sustained damage. The court awarded KVV nominal damages of $1 and declined to award attorney fees.

After reconsideration was denied, KVV timely appealed to this court. Richland filed a cross appeal from the determination that the taking was temporary.

---

[2] There were additional parties that were dismissed from the action before trial and different causes of action against Richland that also were dismissed before trial. Of the claims tried to the bench, only the inverse condemnation claim presents issues for our review.

4

ANALYSIS

The trial court was unconvinced that KVV had been harmed by Richland's direction of water to its property. KVV vigorously argues both that it had no obligation in a condemnation case to establish its losses and that it nonetheless did so. We conclude that KVV did bear the burden to establish its losses and that its failure to convince the trial judge is not something that we can remedy for it on appeal. We decline to consider Richland's cross appeal except to the extent this issue is also argued by KVV.

In order to prevail in an inverse condemnation action, the plaintiff must establish a "taking" by the government. *Borden v. City of Olympia*, 113 Wn. App. 359, 374, 53 P.3d 1020 (2002). In this context, a taking consists of an appropriation of private property without exercise of the power of eminent domain. *Phillips v. King County*, 136 Wn.2d 946, 957, 968 P.2d 871 (1998). The elements are "(1) a taking or damaging (2) of private property (3) for public use (4) without just compensation being paid (5) by a governmental entity that has not instituted formal proceedings." *Id.* The plaintiff must establish more than simply interference with the owner's property rights. Rather, there must be a permanent or recurring interference that "destroys or derogates" a fundamental ownership interest. *Borden*, 113 Wn. App. at 374.

This court reviews a trial court's decision following a bench trial to determine whether substantial evidence supports any challenged findings and whether the findings

5

support the conclusions of law. *State v. Hovig*, 149 Wn. App. 1, 8, 202 P.3d 318 (2009).

"Substantial evidence" is sufficient evidence to persuade a fair-minded person of the truth

of the declared premise. *Panorama Vill. Homeowners Ass'n v. Golden Rule Roofing,*

*Inc.*, 102 Wn. App. 422, 425, 10 P.3d 417 (2000). Conclusions of law are reviewed de

novo. *Robel v. Roundup Corp.*, 148 Wn.2d 35, 42, 59 P.3d 611 (2002). We defer to the

trial court's credibility determinations; we will not reweigh evidence even if we would

have resolved conflicting evidence differently. *Thorndike v. Hesperian Orchards, Inc.*,

54 Wn.2d 570, 575, 343 P.2d 183 (1959); *Quinn v. Cherry Lane Auto Plaza, Inc.*, 153

Wn. App. 710, 717, 225 P.3d 266 (2009). Stated another way, an appellate court is not in

a position to find persuasive evidence that the trier of fact found unpersuasive. *Quinn*,

153 Wn. App. at 717.

These principles resolve KVV's argument that it did in fact prove its damages.

We agree with KVV that there was evidence from Mr. Johnson's testimony that would

have established the cost of restoring the property with fill dirt.[3] However, the trial judge

was not required to credit that information and find it persuasive, and this court is not in

---

[3] KVV did not necessarily prove that the fair market value of the property had been diminished, let alone destroyed. There was no appraisal of the property. The two sales agreements did not establish the market value because neither sale went through. They did suggest that the value of the land had appreciated greatly in less than a decade despite the rising groundwater levels. There also was no evidence that the land could not still be developed. Under the circumstances, the trial court understandably did not find actual damage.

6

the position of reweighing that evidence. Although the evidence would have supported a contrary finding, it was entirely the trial court's prerogative to decide how persuasive it found the evidence. Having concluded it was not persuasive, the story ended there.

KVV also argues that once it established that its property had been damaged, it had no burden to prove the amount of its damages. It analogizes to a condemnation action in which the government, desiring to take private property for public use, must present evidence of the fair market value of the property, although no party has a burden of proving value. *E.g., State v. Amunsis*, 61 Wn.2d 160, 164, 377 P.2d 462 (1963).[4]

No Washington court appears to have yet considered the burden of proof, if any, on the damages component of an inverse condemnation action.[5] Our courts have assigned the burden of proof to the property owner to establish that a taking occurred. *E.g., Kahuna Land Co. v. Spokane County*, 94 Wn. App. 836, 841, 974 P.2d 1249 (1999) (landowner had burden of establishing regulatory taking); *Burton v. Clark County*, 91 Wn. App. 505, 516, 958 P.2d 343 (1998) (same).

---

[4] The same rule applies at a condemnation hearing in which the parties agree that a special benefit to the land exists and the remaining question is the value of the land with the benefit. *State v. Templeman*, 39 Wn. App. 218, 223-24, 693 P.2d 125 (1984).

[5] A justice dissenting in a condemnation case suggested that the landowner bore the burden of proof in an inverse condemnation case. *State v. Ward*, 41 Wn.2d 794, 798, 252 P.2d 279 (1953) (Grady, J., dissenting).

Richland cites numerous cases which it argues show that all jurisdictions in this country to consider the issue have concluded that the landowner bears the burden of proving damages. Included among that list are *Carolina Chloride, Inc. v. Richland County*, 394 S.C. 154, 170, 714 S.E.2d 869 (2011); *Lawrence County v. Miller*, 2010 S.D. 60, 786 N.W.2d 360, 366; *Taylor v. Department of Transportation*, 879 So.2d 307, 319 (La. Ct. App. 2004); and *DeKalb County v. Daniels*, 174 Ga. App. 319, 329 S.E.2d 620, 623-24 (1985). While the cases cited by Richland support its argument, they are of limited utility due to the varying state constitutional provisions that undergird condemnation and inverse condemnation actions.

The general proposition that "each party has the burden to prove the affirmative of an issue" does not apply to land valuation in condemnation actions. *State v. Templeman*, 39 Wn. App. 218, 224, 693 P.2d 125 (1984). As explained in *Amunsis*, the reason is that juries will consider competing land valuations and select the appropriate value in light of the evidence. There simply is no issue of law or fact to which the burden "'may intelligently and reasonably be applied.'" *Amunsis*, 61 Wn.2d at 163 (quoting *Martin v. City of Columbus*, 101 Ohio St. 1, 127 N.E. 411 (1920)).[6]

---

[6] "'You might as well undertake to fit a hat to a headless man as to fit the doctrine of burden of proof to a proceeding of this character, which is absolutely wanting an issue to which such a doctrine can be applied.'" *Amunsis*, 61 Wn.2d at 164 (quoting *Martin*, 101 Ohio St. 1).

8

However, the *Amunsis* concern is not presented in an inverse condemnation case. Instead, the party claiming inverse condemnation must prove a taking, one element of which is the loss of the property or a diminution in its value. *Phillips*, 136 Wn.2d at 957. Unless the taking element is conceded, which it was not here, the *Amunsis* rule would relieve the plaintiff of proving one element of its case. Accordingly, we hold that the plaintiff in an inverse condemnation action bears the burden of proof in establishing the diminution in value of its property. The *Amunsis* rule is inapplicable when the diminution of value element of a taking claim is contested at trial. The trial court did not err in concluding that KVV failed to sustain its burden of proving damages.

Two other damages-related arguments remain.[7] KVV contends that the trial court applied the wrong damages standard because it treated this case as a recurring temporary taking rather than a permanent taking. Richland argues in its cross appeal that the court erred in finding a temporary taking rather than a permanent taking because it has no specific plans to remediate its drainage plan and its effect on the KVV property. We decline to consider Richland's argument, except to the extent that it overlaps KVV's

---

[7] KVV also assigns error to the trial court failing to award its attorney fees after prevailing at trial. *See* RCW 8.25.075(3). However, the award of nominal damages does not satisfy the statutory directive awarding attorney fees to a landowner who establishes an entitlement to compensation. In a different context, our court has consistently noted that nominal damages are not "real damages." *E.g.*, *Gilmartin v. Stevens Inv. Co.*, 43 Wn.2d 289, 294, 261 P.2d 73 (1953) (quoting *Bellingham Bay & British Columbia R.R. v. Strand*, 4 Wash. 311, 314, 30 P. 144 (1892)).

argument, because it has not established that a ruling will have any future impact; it is essentially a moot question in light of our disposition.

In awarding damages for injury to real property, including cases of inverse condemnation, a court must first determine if the damage is temporary or permanent. *Harkoff v. Whatcom County*, 40 Wn.2d 147, 152, 241 P.2d 932 (1952). Permanent damage is valued by determining the market value of the property before and after the damage. *Id.* Temporary damage is valued in accordance with the cost of restoring the property. *Id.* Whether damage is permanent or temporary is a factual question. *Barci v. Intalco Aluminum Corp.*, 11 Wn. App. 342, 355, 522 P.2d 1159 (1974).

The parties both argue that the trial court erred by finding the taking to be temporary rather than permanent. Since this is a factual question, we would normally defer to the trier of fact on this point. *Quinn*, 153 Wn. App. at 717. However, we need not consider this challenge because KVV failed to prove its case under either standard.

The trial court determined the taking was temporary, but found the proof of remediation costs insufficient to grant relief. The trial court additionally addressed the diminution in value question and also found KVV's proof lacking.[8] It specifically found that there was no proof of the property's value before the groundwater began rising or afterwards. Thus, even if the court had erred in determining that the damage was

---

[8] *See* Findings of Fact 69, 70, 71, and 75. Clerk's Papers at 414.

10

temporary rather than permanent, the alleged error was of no consequence to the outcome of the trial. Under either measure of damage, the trial court was not convinced that KVV had shown that it actually suffered a loss.

The trial judge concluded that Richland had harmed KVV through its channeling of waters to its ditches adjoining KVV's property, resulting in occasional flooding and significant increases in the water table. The evidence supports those determinations. The trial judge also found that KVV had not shown that its property value suffered from the city's actions or that it had adequately proven the cost of remedying the situation. As the trier of fact, the judge was not required to find the evidence convincing. Accordingly, the court did not err when it ruled that although Richland had inversely condemned the property through its water management actions, KVV was not entitled to actual damages.

Affirmed.

Korsmo, C.J.

WE CONCUR:

Kulik, J.

Siddoway, J.

11