IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In re the Marriage of: | ) | No. 31951-2-III |
| | ) | |
| FLORENTINA FLORES, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| JULIO V. FLORES, | ) | |
| | ) | |
| Appellant. | ) | |

BROWN, J. – Julio Flores appeals the superior court's marriage dissolution decree favoring Florentina Flores. He contends the court erred by (1) valuing his heating and air conditioning business at $82,500, (2) finding his annual income to be $78,000, (3) finding he owned a motorcycle included in the property division, (4) finding he took $34,000 from a joint savings account, (5) distributing community assets, (6) finding Ms. Flores needed maintenance, (7) awarding Ms. Flores attorney fees and costs, and (8) denying his motions for reconsideration. We conclude the trial court did not abuse its broad discretion or fail to apply the relevant legal factors and affirm.

FACTS

Julio Flores and Florentina Flores married in April 1993 and separated in September 2010. The couple have four daughters ages 18, 17, 14, and 13. Mr. Flores owns JR's Heating and Air Services (JR's). Mainly, the parties disputed the business valuation and the extent of Mr. Flores' income. Ms. Flores works at Prosser School District and harvests cherries during the summer. Generally, the court received extensive evidence on all issues, decided the disputed factual issues within the range of presented evidence, and correctly applied disputed legal factors.

First, regarding the business valuation, in 1996, Mr. and Ms. Flores started JR's as a sole proprietorship. JR's pre-tax income showed: $30,000 in 2006; $12,622 in 2007; -$5,510 in 2008; $3,505 in 2009; and -$2,433 in 2010. Retained earnings for JR's showed: $90,613 in 2009; $121,286 in 2010; and $96,828 in 2011. In 2011, Mr. Flores started using QuickBooks to record his income and expenses. In preparing Mr. Flores' 2011 tax returns, income errors were discovered necessitating an amended return. Certified Public Accountant (CPA) Joseph Reid, with business valuation accreditation, prepared business valuation reports for JR's and was Ms. Flores' witness.

Initially, in a first report, Mr. Reid used the tax returns from 2006-2011, bank statements, invoices, and an on-site meeting with Mr. Flores. Using multiple valuation approaches including the market approach, the asset approach, the capitalization approach, and the discounting cash flow approach, Mr. Reid concluded JR's value at $65,000. Later in a second report, Mr. Reid discovered discrepancies in the

2

QuickBooks files obtained from Mr. Flores and recalculated JR's value and Mr. Flores' income. Using Mr. Flores' mark-up of 65 percent for goods sold and an hourly labor rate of $85, he calculated JR's gross revenue for 2011 at $228,099. He compared this value to $222,348, the gross revenue calculated using the national average mark-up for heating and air companies as determined by the Risk Management Association. Averaging the two, Mr. Reid determined JR's gross revenue for 2011 was $225,224. He calculated 2011 net profits at $18,000 after explaining his calculations, then valued the business at $100,000. He estimated Mr. Flores' annual salary as $60,000, explaining his calculations. The $18,000 net profit was consistent with the profit anticipated for the amended 2011 tax return. JR's pre-tax income in 2012 was anticipated to be $47,000.

The court determined JR's value to be $82,500, the median value between the initial valuation and the second valuation, and awarded the asset to Mr. Flores. The court denied Mr. Flores' motion for reconsideration, which included his amended 2011 tax return and 2012 tax return.

Second, regarding Mr. Flores' income, in his second report, Mr. Reid added the estimated salary ($60,000) and net profit ($18,000) to determine Mr. Flores' annual income at $78,000. Brian Newhouse, Mr. Flores' accountant, testified he could not accurately determine Mr. Flores' income based on the existing documentation. But in a 2007 loan application to refinance his home mortgage, Mr. Flores declared his monthly income to be $10,000. And in a 2012 loan application to buy a work van, Mr. Flores

3

indicated his annual income was $100,000. The court accepted Mr. Reid's estimation of Mr. Flores' income at $78,000. The court denied Mr. Flores' motion for reconsideration, which included his amended 2011 tax return and 2012 tax return.

Third, regarding the 2011 Harley Street Glide Motorcycle, Ms. Flores testified she saw Mr. Flores driving a 2011 Harley Street Glide and valued the motorcycle at $20,000. Mr. Flores stated the motorcycle belonged to his brother, however, Mr. Flores maintained insurance on it and bought parts for the Street Glide. The court found Mr. Flores owned the Street Glide, valued it at $20,748, and awarded it to Mr. Flores. The court denied Mr. Flores' motion for reconsideration, which included the motorcycle's registration and a statement from his brother, Luis Flores, declaring Luis as the owner of the Street Glide.

Fourth, regarding the Yolanda Flores' obligation, Mr. Flores' mother purchased a mobile home for $12,000 and made improvements. In 1998, Yolanda sold the parties land and the mobile home in exchange for them repaying a $30,000 loan to Paul Rupp. Yolanda and Mr. Flores testified Mr. Flores also agreed to pay an additional $33,500 to Yolanda. Ms. Flores was unaware of this second obligation. Yolanda later executed and recorded a deed which indicated the land was a gift. Mr. Flores stated the "gift" designation allowed them to avoid paying excise taxes. The obligation to Mr. Rupp was paid in full by 2003. After separation, Mr. Flores withdrew $130,000 from their joint savings account. He gave his mother $34,000. In January 2011, the court ordered Mr. Flores to put the money into an account and provide an accounting of any money spent.

Mr. Flores deposited $96,000 and said he used $34,000 for business expenses. Nine months later, Mr. Flores produced a handwritten note from his mother stating her son gave her $34,000 to pay for the land and the mobile home. The court found Mr. Flores took $34,000 from the savings account. The court denied Mr. Flores' motion for reconsideration, stating it did not find either Mr. Flores' or Yolanda's testimony credible.

Fifth, the court's decree addressed property division, maintenance, child support, and attorney fees and costs. The court awarded Ms. Flores 55 percent of the assets and Mr. Flores 45 percent. The court found Ms. Flores had the need for maintenance and Mr. Flores had the ability to pay. The court determined monthly child support payments for the three minor children at $1,919. It set maintenance at $1,500 per month for 84 months. The court awarded Ms. Flores expert witness fees for the business valuation appraisal, personal property appraisal fees, and attorney fees.

### Standard of Review

> [T]rial court decisions in a dissolution action will seldom be changed upon appeal. Such decisions are difficult at best. Appellate courts should not encourage appeals by tinkering with them. The emotional and financial interests affected by such decisions are best served by finality. The spouse who challenges such decisions bears the heavy burden of showing a manifest abuse of discretion on the part of the trial court. The trial court's decision will be affirmed unless no reasonable judge would have reached the same conclusion.

*In re Marriage of Landry*, 103 Wn.2d 807, 809-10, 699 P.2d 214 (1985) (internal citations omitted); *see also In re Marriage of Knies*, 96 Wn. App. 243, 253, 979 P.2d 482 (1999) ("Discretion is abused where it is exercised on untenable grounds or for untenable reasons.").

## ANALYSIS

### A. Business Valuation and Mr. Flores' Income

The issue is whether substantial evidence supports both the superior court's conclusions for JR's business valuation and Mr. Flores' income. Mr. Flores contends Mr. Reid's expert opinions for business value and his income were based on speculation and assumption and lacked evidentiary value.

"Goodwill is a property or asset which usually supplements the earning capacity of another asset, a business or a profession." *In re Marriage of Hall*, 103 Wn.2d 236, 241, 692 P.2d 175 (1984). The value of goodwill is a question of fact. *Id.* at 246. To value goodwill, at least one accepted valuation method must be used. *In re Marriage of Luckey*, 73 Wn. App. 201, 206, 868 P.2d 189 (1994); *see Hall*, 103 Wn.2d at 243-45 (listing as acceptable methods straight capitalization, capitalization of excess earnings, the IRS variation of capitalized excess earnings, market value, and buy/sell agreement). "Findings of fact supported by substantial evidence in the record will not be reversed on appeal." *Hall*, 103 Wn.2d at 246. "Substantial evidence is evidence sufficient to persuade a fair-minded person of the truth of the declared premise." *Id.*

A trial court's failure to "state on the record which factors and accounting method were used in arriving at its finding . . . will deem the valuation to be unsupported by sufficient evidence, necessitating reversal and remand for proper findings." *In re Marriage of Crosetto*, 82 Wn. App. 545, 554, 918 P.2d 954 (1996). But if a credible expert testifies his valuation is based on acceptable accounting methods and a trial

court adopts that valuation or a valuation within the range of expert testimony, the trial court's valuation is supported by substantial evidence and will be affirmed on appeal. *In re Marriage of Harrington*, 85 Wn. App. 613, 637, 935 P.2d 1357 (1997). "To rule otherwise would be to place the appellate courts in the position of weighing expert testimony." *In re Marriage of Sedlock*, 69 Wn. App. 484, 491, 849 P.2d 1243 (1993). Instead, appellate courts look "to the reasonableness of the trial court's bottom line result, in light of all the expert testimony." *Id.* An expert's opinion cannot be "based on assumptions for which there was no factual basis." *Riccobono v. Pierce County*, 92 Wn. App. 254, 268, 966 P.2d 327 (1998).

In computing income, absent a business necessity for retaining the earnings, trial courts may consider as income a business' retained earnings in addition to the profit reported on tax returns. *In re Marriage of Stenshoel*, 72 Wn. App. 800, 806-07, 866 P.2d 635 (1993). Mr. Reid, a CPA with accreditation in business valuation, used several legally acceptable methods to value JR's. He reviewed JR's tax returns for the previous seven years, bank statements, billable hours, hourly rates, cost of goods sold, the reputation of JR's, and past earnings to calculate JR's value in 2011. Mr. Reid's net profit calculation was slightly lower than the actual profit seen in the amended 2011 tax return. As Mr. Reid's two valuation reports were admitted into evidence, the court chose a value in the middle of the two valuations. The court's finding regarding JR's value was thus supported by substantial evidence.

7

In calculating JR's profit, Mr. Reid estimated Mr. Flores' annual salary at $60,000. Given the lack of income records, Mr. Reid reasonably estimated income by taking into account the need to retain a profit for the business, what it would take to hire someone to perform Mr. Flores' job, and certain risk factors. Mr. Reid added JR's net profit to the estimated salary for a final income of $78,000. This amount is below Mr. Flores' multiple representations that his income was $100,000 or more a year. Notably, JR's consistently had over $90,000 per year in retained earnings. In the end, the court accepted Mr. Reid's testimony over Mr. Flores' regarding both the value of JR's and Mr. Flores' income. The trial court, not the appellate court, decides evidence weight and witness credibility.

Even if we disagreed with the superior court, the question is whether tenable grounds and tenable reason existed. The court determined JR's value and Mr. Flores' income based on Mr. Reid's calculations. Mr. Reid relied on extensive facts and case law. Mr. Reid has been valuing businesses for a number of years. The court's valuation of JR's and income computation were well within the range of evidence.

Additionally, the superior court acted within its discretion in denying Mr. Flores' reconsideration motion. A motion for reconsideration may be brought for the reasons in CR 59(a).[1] We do not reverse reconsideration rulings without a manifest abuse of

---

[1] Mr. Flores contends the following grounds merit granting his motion for reconsideration on all issues: "[a]ccident or surprise which ordinary prudence could not have guarded against"; "[n]ewly discovered evidence, material for the party making the application, which he could not with reasonable diligence have discovered and produced at the trial"; "[t]hat there is no evidence or reasonable inference from the

discretion. *Pac. Indus., Inc. v. Singh*, 120 Wn. App. 1, 11, 86 P.3d 778 (2003). "Reconsideration is warranted if the moving party presents new material evidence that could not have been produced at trial." *In re Marriage of Tomsovic*, 118 Wn. App. 96, 109, 74 P.3d 692 (2003). Newly discovered evidence is not "evidence presented for the first time in a motion for reconsideration" unless the party shows he could not have obtained the evidence earlier. *Id.*

In Mr. Flores' motion for reconsideration on JR's value and his income, the sole new evidence claimed was his amended 2011 tax return and his 2012 tax return. The amended 2011 tax return merely reinforced Mr. Newhouse's trial testimony regarding JR's profit. Mr. Newhouse testified about expected profit for 2012. As Mr. Flores' income could not be determined from JR's prior tax returns, nothing indicates these new tax returns would shed light on the issue. The superior court's findings were reasonable inferences from the evidence. Given all, we conclude the superior court did not abuse its discretion in denying Mr. Flores' reconsideration motion.

### B. Disputed Motorcycle

The issue is whether the superior court erred in determining Mr. Flores owned the 2011 Harley Street Glide and in denying Mr. Flores' reconsideration motion. Mr. Flores contends the evidence showed his brother, Luis, was the owner.

An appellate court's "role or function is not to substitute [its] judgment for that of the trial court or to weigh the evidence or credibility of witnesses." *Sedlock*, 69 Wn.

---

evidence to justify the verdict or the decision, or that it is contrary to law"; and "[t]hat substantial justice has not been done." CR 59(a)(3), (4), (7), (9).

App. at 491. The superior court gave the documentation of Mr. Flores' insurance policy on the motorcycle and testimony of Ms. Flores more weight than the testimonies of Mr. Flores and his mother. This is clearly an issue of weighing evidence and credibility of witnesses for the trial court. As for Mr. Flores' reconsideration request, he argues he had no indication the superior court did not believe his testimony and substantial justice was not done. But Mr. Flores did not show Luis was unavailable to testify at trial or demonstrate Luis' testimony would be persuasive to the court. Accordingly, we conclude the superior court did not err in denying the reconsideration motion.

### C. Yolanda Flores' Obligation

The issue is whether the superior court erred in awarding Mr. Flores $34,000 as an asset and denying his reconsideration motion. Mr. Flores contends this money constituted community funds used to pay community debt.

We defer to trial court credibility determinations, and we will not reweigh conflicting evidence. *Keene Valley Ventures v. Richland*, 174 Wn. App. 219, 224, 298 P.3d 121, *review denied*, 178 Wn.2d 1020 (2013). While Mr. Flores' and Yolanda's testimony could evidence a community debt, the court was not required to find that testimony persuasive. Instead, the court determined Ms. Flores' testimony, combined with documentation of the satisfaction of lien and loan documents, were more credible. Even though the evidence could have supported a finding in Mr. Flores' favor, we do not reweigh evidence; the superior court did not err. Mr. Flores asserted no new evidence

10

or contrary law in his reconsideration motion. Thus, the superior court did not abuse its discretion in denying the motion.

## D. Spousal Maintenance

The issue is whether the superior court abused its discretion in awarding Ms. Flores spousal maintenance of $1,500 per month for 84 months. Mr. Flores contends the superior court failed to correctly apply the statutory factors seen in RCW 26.09.090, resulting in Ms. Flores' unjust enrichment. He mainly argues the court failed to consider his financial resources when making the award.

A trial court is given broad discretion in awarding maintenance to address the parties' circumstances. *Bulicek v. Bulicek*, 59 Wn. App. 630, 634, 800 P.2d 394 (1990). The sole limitation on a maintenance award under the RCW 26.09.090 factors is justice. *Id.* Factors to be considered include: the financial resources of the spouse seeking maintenance, including community property apportioned her, and her ability to meet her needs independently; the time needed to acquire education to enable that party to find appropriate employment; the standard of living established during the marriage; the duration of the marriage; the age, physical and emotional condition, and financial obligations of the spouse seeking maintenance; and the ability of the other spouse to meet his needs while meeting those of the spouse seeking maintenance. RCW 29.09.090. The trial court's paramount concern should be "the economic condition in which the dissolution decree leaves the parties." *In re Marriage of Williams*, 84 Wn. App. 263, 268, 927 P.2d 679 (1996).

11

Here, the court considered the RCW 26.09.090 factors and decided maintenance was required under the circumstances. The court split the community assets 55/45 because of Mr. Flores' ability to earn more income than Ms. Flores. Ms. Flores' income will remain steady at approximately $1,350 per month. Ms. Flores was awarded approximately $250,000 in community property, including $28,700 in her pension plan, $96,000 in cash, and $18,000 in equity in the house. She had to take over making payments on the $158,000 mortgage, $20,000 of which was a business loan for JR's. Ms. Flores estimated her household expenses for herself and her four daughters was $5,600 per month. Ms. Flores has no current plans to pursue education. Comparatively, Mr. Flores' income increased over a three-year period, from a loss of $3,000 in 2010 to a profit of $49,000 in 2012. He estimated his monthly expenses at $1,600. The court found Mr. Flores "ha[d] been able to continually purchase non-essential items, such as motorcycle parts." Clerk's Papers (CP) at 5.

Based on the above, the length of the marriage, and ascribing an annual income of $78,000 to Mr. Flores, the court ordered Mr. Flores to pay $1,500 per month for 84 months as maintenance. This maintenance award lasts two years after the youngest daughter graduates from high school, so Ms. Flores could return to school if she desires. The court ordered Mr. Flores to pay $1,919 per month in child support. Addition of child support and maintenance results in approximately $3,500 per month, a little more than half of Mr. Flores' gross monthly income. After subtracting Mr. Flores' monthly expenses, he is left with a little under $1,500 in discretionary income, which is

12

far more than what Ms. Flores realizes. Thus, after the court's consideration of the relevant statutory factors, we cannot say the superior court's discretion in awarding maintenance was based on untenable grounds or manifestly unreasonable.

### E. Superior Court Attorney Fees and Costs

The issue is whether the superior court erred in awarding attorney fees and investigation costs to Ms. Flores. Mr. Flores contends the court failed to consider the liquid assets it awarded to Ms. Flores in the property division in ascertaining her need for attorney fees and costs.

The trial court's decision to award attorney fees and costs in a dissolution action is discretionary. *In re Marriage of Mattson*, 95 Wn. App. 592, 604, 976 P.2d 157 (1999). RCW 26.09.140 requires the trial court to "balance the needs of the spouse requesting them with the ability of the other spouse to pay." *Mansour v. Mansour*, 126 Wn. App. 1, 16-17, 106 P.3d 768 (2004) (no error in trial court's refusal to award wife attorney fees where wife could pay fees with money received from selling the house). A spouse is not precluded from receiving an award of attorney fees and costs because she also received substantial property or maintenance. *In re Marriage of Morrow*, 53 Wn. App. 579, 590, 770 P.2d 197 (1989).

The court distributed 55 percent of the property to Ms. Flores and found she had a need for an award of attorney fees and costs while Mr. Flores had the ability to pay. Mr. Flores has a higher earning power than Ms. Flores: Ms. Flores' income is one-fourth of Mr. Flores and, unlike Mr. Flores', is without the capacity to grow. Mr. Flores had

13

been able "to continually purchase non-essential items, such as motorcycle parts, during the pendency of the dissolution." CP at 46. Even with the maintenance and child support, Ms. Flores does not have enough money for her monthly expenses. On the other hand, Mr. Flores' net monthly calculated income is $5,158. When subtracting his monthly maintenance, child support, and personal expenses, he is left with approximately $150 per month, or $1,800 per year.

If one spouse's intransigence caused the spouse seeking the award to incur additional legal services, "the financial resources of the spouse seeking the award are irrelevant." *In re Marriage of Greenlee*, 65 Wn. App. 703, 708, 829 P.2d 1120 (1992). Examples of intransigent conduct includes obstructionist behavior, filing repetitive or unnecessary motions, and attempting to make the proceeding unduly difficult with increased legal costs. *Id.* Unless intransigence was seen throughout the entire proceedings, fee awards should be segregated to show fees incurred as a result of intransigence versus those incurred for other reasons. *Crosetto*, 82 Wn. App. at 565.

Mr. Flores was intransigent during the proceedings. He failed to place all the money he took from the joint savings account into the blocked account. He failed to timely and accurately account for the missing money. Documents produced pretrial and with ER 904s showed conflicting information necessitating a second business valuation for JR's. He failed to pay medical expenses for his children, as ordered by the court. He stopped paying bills on the house, including the mortgage, necessitating court action. Thus, regardless of Mr. Flores' ability to pay, his intransigent behavior

14

throughout the proceedings serves as a basis for awarding attorney fees and costs to Ms. Flores.

### F. Appellate Attorney Fees and Costs

Ms. Flores contends Mr. Flores' appeal is frivolous and requests appellate attorney fees and costs under RAP 18.1(a), which authorizes such an award if provided by applicable law. She requests discretionary attorney fees and costs under RCW 26.09.140, based on her need and his ability to pay. We consider "the arguable merit of the issues on appeal and the financial resources of the respective parties." *In re Marriage of Booth*, 114 Wn.2d 772, 779, 791 P.2d 519 (1990). "An appeal is frivolous if there are no debatable issues upon which reasonable minds might differ and if it is so totally devoid of merit that there is no reasonable possibility of reversal." *In re Marriage of Schnurman*, 178 Wn. App. 634, 644, 316 P.3d 514 (2013). Any doubt about whether an appeal is frivolous is resolved in the appellant's favor. *Id.* "An appeal that is affirmed simply because the arguments are rejected is not frivolous." *Id.*

While some of Mr. Flores' contentions on appeal lack arguable merit, others do not. Reasonable minds could differ in valuing JR's and computing Mr. Flores' income. Furthermore, given Mr. Flores is paying Ms. Flores' attorney fees and costs from the superior court proceeding and the $96,000 in cash she received from the property division, Ms. Flores has the ability to pay the fees incurred in this appeal. Accordingly, we deny Ms. Flores' request for an award of fees.

Affirmed.

No. 31951-2-III
*In re Marriage of Flores*

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

Brown, J.

WE CONCUR:

Siddoway, C.J.

Fearing, J.

16