IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| SINEAD MARINO, | No. 79609-7-I |
| | |
| Respondent, | DIVISION ONE |
| | |
| v. | |
| | UNPUBLISHED OPINION |
| MATTHEW MARINO, | |
| | |
| Appellant. | |

CHUN, J. — Six months after their divorce, Sinead Marino petitioned for an order of protection against Matthew Marino,[1] claiming that he had been stalking her by using her old phone to access her bank and social media accounts and by hiring a private investigator to follow her. After a hearing where both Sinead and Matthew testified, the trial court entered a stalking order of protection. Matthew appeals, arguing that actions alleged by Sinead did not demonstrate stalking. Because substantial evidence supports the trial court's finding otherwise, it did not abuse its discretion by entering the order. We affirm.

## I. BACKGROUND

On January 3, 2019, Sinead petitioned for an order of protection against her ex-husband, Matthew, for stalking. The same day, the court ordered a temporary restraining order preventing Matthew from surveilling Sinead and set a hearing for January 15, 2019.

---

[1] For clarity, we refer to Sinead Marino and Matthew Marino by their first names. We intend no disrespect.

Citations and pin cites are based on the Westlaw online version of the cited material.

At the January 15 hearing, Sinead testified to the following: Matthew continued to engage in "stalking habits" after the finalizing of their divorce. In one instance, Matthew "accessed [her] Ancestry account" and "basically stole [her] identity and read all [her] private messages." Sinead had assumed that she was awarded control over the account in the divorce because the account was under her e-mail address. Sinead also believed that Matthew hacked into an account that her employer used to reimburse her for work-related activities because he knew the exact amount of her last reimbursement without her having told him. Matthew further accessed her social accounts and read private messages.

Sinead next pointed to Matthew hiring a private investigator to follow her. Sinead believed that the investigator had used GPS (Global Positioning System) to track her vehicle. The investigator followed her for around four weeks. Matthew's actions caused Sinead to feel afraid and threatened.

Matthew then testified as follows: He originally created the Ancestry account but Sinead later changed the log-in credentials to her information to build a "family tree." His phone had saved the log-in information so, when he accessed the account after the divorce, he changed the username back to his e-mail address. Additionally, Matthew had one of Sinead's old phones repaired. When the phone turned back on, Matthew could access notifications from Sinead's bank and see the reimbursement Sinead received from her employer. Matthew also used the phone to access Sinead's social media accounts. While Matthew had hired a private investigator, he did it "to monitor [the children] and really find out where the children were" when in Sinead's custody.

2

On cross-examination, Sinead asked Matthew if he would return the phone that he had used to access her information. Matthew refused because, as the court had finalized their divorce in June 2018, he planned to reformat it.

The court determined that Matthew had engaged in a course of conduct that constituted stalking, focusing on Sinead's old phone:

> You know, [Matthew] was actually pretty credible until we talked about the phone, and he kept saying, well, I'm going to keep this phone, and, I'm going to keep it after the divorce is over. I'm going to keep looking at it, and his credibility died, and suddenly the validity of the petitioner's assertions really kind of brightened up.
>
> . . .
>
> And so, the, you know, his response to, well, I'll do it when I want to, and, I'll do what I want to with it, well, that strikes me as a little overbearing.
>
> So I think there is a basis that the court does believe that the [Matthew] is engaging in a course of conduct that constitutes stalking.

The court made its order effective until January 15, 2020. Matthew appeals.

## II. ANALYSIS

Matthew argues that the trial court erred by issuing the order of protection because none of the acts alleged by Sinead constitute stalking conduct under the statutory definition. Sinead contends the court properly issued the protection order. We determine the trial court did not abuse its discretion by issuing the order.

We review a trial court's decision to grant an order of protection for an abuse of discretion. Ugolini v. Ugolini, 11 Wn. App. 2d 443, 446, 453 P.3d 1027 (2019). We will conclude that a trial court abused its discretion only when "the decision is manifestly unreasonable, or exercised on untenable grounds, or for

3

untenable reasons." Ugolini, 11 Wn. App. 2d at 446 (internal quotation marks and citations omitted).

Where, before entering a protection order, the trial court holds a hearing and weighs contradictory evidence, we review the trial court's findings for substantial evidence. In re Marriage of Rideout, 150 Wn.2d 337, 351, 77 P.3d 1174 (2003). Substantial evidence is evidence that "when viewed in the light most favorable to the party prevailing below, is sufficient to persuade a fair-minded, rational person that the declared premise is true." Boisen v. Burgess, 87 Wn. App. 912, 918, 943 P.2d 682 (1997); In re Welfare of T.B., 150 Wn. App. 599, 607, 209 P.3d 497 (2009).

"If the court finds by a preponderance of the evidence that the petitioner has been a victim of stalking conduct by the respondent, the court shall issue a protection order." RCW 7.92.100(1)(a). RCW 7.92.020(3) defines "stalking conduct" as:

> (a) Any act of stalking as defined under RCW 9A.46.110;
>
> (b) Any act of cyberstalking as defined under RCW 9.61.260;
>
> (c) Any course of conduct involving repeated or continuing contacts, attempts to contact, monitoring, tracking, keeping under observation, or following of another that:
>
> (i) Would cause a reasonable person to feel intimidated, frightened, or threatened and that actually causes such a feeling;
>
> (ii) Serves no lawful purpose; and
>
> (iii) The stalker knows or reasonably should know threatens, frightens, or intimidates the person, even if the stalker did not intend to intimidate, frighten, or threaten the person.

Here, viewing the evidence in the light most favorable to Sinead, Matthew used an old phone of hers to look at her bank and social media accounts.

4

Though Matthew claimed he was waiting to reformat the phone until after the divorce, the divorce was finalized six months prior and he still had not done so. Matthew additionally claimed that he had not used the phone to access Sinead's accounts since the divorce became final, but the court did not find Matthew to be credible. "We defer to the trial court's credibility determinations." Keene Valley Ventures, Inc. v. City of Richland, 174 Wn. App. 219, 224, 298 P.3d 121 (2013).

The testimony regarding the phone shows repeated access to Sinead's personal accounts. It constitutes substantial evidence of a course of conduct involving repeated monitoring that would cause a reasonable person to feel frightened, threatened, or intimidated. Matthew reasonably should have known that this conduct would, and indeed did, cause Sinead to feel frightened and threatened. Further, Matthew does not submit any lawful purpose for using the cell phone to gain unpermitted access to Sinead's accounts. The trial court did not abuse its discretion by entering the stalking order of protection.

Affirmed.

_____
Chun, J.

WE CONCUR:

_____          _____
Mann, C.J.                          Leach, J.